Raymond J. Tittmann No. 191298
Edward J. Valdespino No. 272754
Christina M. Roberto No. 317139
**TITTMANN WEIX LLP**
350 S. Grand Ave., Suite 1630
Los Angeles, California 90071
Phone: 213.797.0630
rtittmann@tittmannweix.com
evaldespino@tittmannweix.com
croberto@tittmannweix.com

Attorneys for Defendant
AMERICAN SECURITY INSURANCE COMPANY and
JOSHUA ANDREWS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| MELISSA SHROPSHIRE, an individual, and BRYAN SHOPSHIRE, an individual,<br><br>        Plaintiff,<br>    vs.<br><br>AMERICAN SECURITY INSURANCE COMPANY, a Delaware corporation authorized to do business in California; RIMKUS CONSULTING GROUP, INC., a Texas corporation authorized to do business in California; JOSHUA ANDREWS, an individual; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 5:21-cv-728<br><br>**AMERICAN SECURITY INSURANCE COMPANYAND JOSHUA ANDREWS'S NOTICE OF REMOVAL**<br><br>Removal Filed: April 23, 2021<br><br>Complaint Filed: January 15, 2021 |

TO THE COURT AND ALL ATTORNEYS OF RECORD:

Defendants American Security Insurance Company ("American Security") and Joshua Andrews ("Andrews") hereby give notice of the removal of this action to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

/ / /

/ / /

## I.     REMOVAL IS TIMELY

1.     Plaintiffs Melissa and Bryan Shropshire ("Plaintiffs") filed the original Complaint on January 15, 2021 against American Security, Rimkus Consulting Group, Inc. ("Rimkus"), and Andrews in the Superior Court of the State of California for the County of San Bernardino, Case No. CIV SB 2102687 the ("State Court Action").  The Complaint was served on American Security on March 26, 2021.  *See* Declaration of Edward J. Valdespino in Support of Removal by American Security Insurance Company, filed simultaneously ("Valdespino Decl."), ¶ 2; and Exhibit 1 to this Notice. Accordingly, this removal is timely under 28 U.S.C. §1446(b).

3.     A copy of all documents filed and served in the State Court Action are attached as Exhibit 1 to this Notice.

## II.     THE COURT HAS JURISDICTION OVER THIS MATTER

4.     The present action is properly removable under 28 U.S.C. § 1441, which provides in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the District Court of the United States for the district or division embracing the place where such action is pending . . . .

5.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which provides in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between—(1) citizens of different States . . . .

6.     The United States District Court for the Eastern District of California is the district embracing the location where the State Court Action is currently pending.

### A.     The Amount in Controversy Exceeds $75,000

7.     Plaintiffs allege that they have sustained damages "in a sum not less than $150,000 according to proof at trial."  *See* Complaint, ¶¶ 31, 49, 65, and 73.  Plaintiffs seek from Defendants "compensatory, general, consequential, and incidental damages, in an amount according to proof, but not

less than $150,000." *See* Complaint, p. 23-24. Plaintiffs also seek exemplary/punitive damages and attorneys' fees. *See* Complaint, p. 23-24. Accordingly, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

### B. There is Complete Diversity Between the Parties

8.  Plaintiffs are citizens of California and are individuals domiciled in the State of California. *See* Complaint, ¶ 1.

9.  American Security is a Delaware corporation with its principal place of business in Atlanta, Georgia. Valdespino Decl., ¶ 4, Ex. A; *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010) (holding that a corporation's "principal place of business . . . refers to the place where a corporation's high-level officers direct, control, and coordinate the corporation's activities, *i.e.*, its 'nerve center,' will typically be found at its corporation's headquarters.").

10. American Security is not incorporated in California nor does it maintain its principal place of business in California. The majority of American Security executive functions, production activities, and operations occur in Georgia. Valdespino Decl., ¶ 4. Georgia is American Security's "nerve center." *Hertz Corp.*, 559 U.S. at 92-93. Therefore, for purposes of determining diversity jurisdiction, American Security is a citizen of Georgia and Delaware. 28 U.S.C. § 1332(c)(1); see *also Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990); *Hertz Corp.*, 559 U.S. at 92-93.

11. Rimkus is a Texas corporation with its principal place of business in Houston, Texas. Valdespino Decl., ¶ 5; *Hertz Corp.*, 559 U.S. at 81. Rimkus is not incorporated in California nor does it maintain its principal place of business in California. The majority of Rimkus executive functions, production activities, and operations occur in Georgia. Valdespino Decl., ¶ 5. Texas is Rimkus' "nerve center." *Hertz Corp.*, 559 U.S. at 92-93. Therefore, for purposes of determining diversity jurisdiction, Rimkus is a citizen of Texas. 28 U.S.C. § 1332(c)(1); see *also Indus. Tectonics, Inc*, 912 F.2d at 1092; *Hertz Corp.*, 559 U.S. at 92-93.

12. Andrews is a citizen of Arizona and is an individual domiciled in the State of Arizona. Andrews resides in Arizona, has his permanent home in Arizona, and intends to remain in Arizona indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1998)) (reciting that "the natural person's citizenship is [ ]

determined by her state of domicile, not her state of residence.  A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."); Valdespino Decl., ¶ 6. As of January 15, 2021, the date the Complaint was filed, Andrews was—and continues to be—domiciled in Arizona.  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

13.    No defendant is a citizen of, nor is domiciled in, the State of California.  28 U.S.C. § 1332(a).  Neither Plaintiff is a citizen of nor is domiciled in the States of Arizona, Delaware, Georgia, or Texas.  *Id.*

C.    **The Court Has Diversity Jurisdiction Over This Matter**

14.    The amount in controversy exceeds $75,000.00 and there is complete diversity between Plaintiffs and Defendants.  As such, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1332(a).

III.    **ADOPTION AND RESERVATION OF DEFENSES**

15.    Nothing in this Notice shall be interpreted as a waiver or relinquishment of any of American Security's rights to assert any defense or affirmative matter, including but not limited to the defenses of (1) lack of personal jurisdiction, (2) improper venue, (3) insufficiency of process, (4) insufficiency of service of process, (5) improper joinder of claims and/or parties, (6) failure to state a claim, (7) failure to join indispensable parties, (8) any other pertinent defense available under California or Federal Rule of Civil Procedure 12, any state or federal statute, or otherwise, or (9) arbitration.

16.    American Security reserves the right to supplement this Notice by adding any jurisdictional defenses which may independently support a basis for removal.

17.    This Notice, together with the additional documents required under the local rules, will be served on Plaintiffs.  Also, as required by 28 U.S.C. § 1446(d), a copy of this Notice will be filed with the Clerk of the Superior Court of San Bernardino, California in which the State Court Action is filed.

WHEREFORE, Defendant American Security Insurance Company asks the Court to take jurisdiction of this action by issuing all necessary orders and process to remove this action from the Superior Court for the State of California, County of San Bernardino, to this Court.

/ / /

/ / /

/ / /

1

Dated:  April 23, 2021                    TITTMANN WEIX LLP

2

3                                                  By: /s/ Edward J. Valdespino
                                                        Raymond J. Tittmann
4                                                       Edward J. Valdespino
                                                        Christina M. Roberto
5

6                                                  Attorneys for Defendant
                                                   AMERICAN SECURITY INSURANCE COMPANY and
7                                                  JOSHUA ANDREWS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Cody J. Shaver, Esq. SBN 319362<br>SHAVER LEGAL, APC<br>4473 Main Street, Riverside, CA 92501 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO. **(800) 672-4159**  FAX NO. *(Optional):* **(951) 848-9489**<br>ATTORNEY FOR *(Name):* Melissa Shropshire, Bryan Shropshire | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO DISTRICT<br><br>JAN 15 2021<br><br>BY _Gloria M Portillo_<br>GLORIA M. PORTILLO, DEPUTY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**
STREET ADDRESS: 247 W. Third Street
MAILING ADDRESS: 247 W. Third Street
CITY AND ZIP CODE: San Bernardino, CA 92415
BRANCH NAME: Hall of Justice

CASE NAME:
Shropshire v. American Security Insurance Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER  CIV SB  2 1 0 2 6 8 7 |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE<br>DEPT |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[x] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 4: Breach of contract; breach of implied covenant; negligent misrep.; and negligent interfere.
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 14, 2021

Cody J. Shaver, Esq.
_____(TYPE OR PRINT NAME)_____    ▶    _____(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_____

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**



# Notice of Service of Process

**DB2 / ALL**
**Transmittal Number: 22977711**
**Date Processed: 03/30/2021**

| | |
|---|---|
| **Primary Contact:** | Ms. Mona Cohen<br>Assurant<br>11222 Quail Roost Dr<br>Miami, FL 33157-6596 |

| | |
|---|---|
| **Entity:** | American Security Insurance Company<br>Entity ID Number  1874436 |
| **Entity Served:** | American Security Insurance Company |
| **Title of Action:** | Melissa Shropshire vs. American Security Insurance Company |
| **Matter Name/ID:** | Melissa Shropshire vs. American Security Insurance Company (11092513) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | San Bernardino County Superior Court, CA |
| **Case/Reference No:** | CiV SB 2102687 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 03/26/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Cody James Shaver<br>800-672-4159 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
AMERICAN SECURITY INSURANCE COMPANY, a Delaware corporation, authorized to do business in California; RIMKUS CONSULTING GROUP, INC. (See additional parties attach.)

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

MELISSA SHROPSHIRE, an individual, and BRYAN SHROPSHIRE, an individual

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JAN 15 2021

BY _____
GLORIA M. PORTILLO, DEPUTY

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
   ¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.
   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: (Número del Caso) |
|---|---|
| (El nombre y dirección de la corte es):  Superior Court of the State of California | CIV SB 2102687 |
| 247 W. Third Street, San Bernardino, CA 92415 | |
| Hall of Justice | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Cody J. Shaver, Esq. SBN 319382 4473 Main Street, Riverside, CA 92501 T: (800) 672-4159

| DATE: JAN 15 2021 | Clerk, by | Gloria Portillo | , Deputy |
|---|---|---|---|
| (Fecha) | (Secretario) | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)

[SEAL]

COPY

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [X] on behalf of (specify): American Security Insurance Company ,a Delaware Corporation Authorized to do Business in California

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
           [X] other (specify): Entity form unknown
4. [ ] by personal delivery on (date)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Shropshire v. American Security Insurance Company | CIV SB 2 1 0 2 6 8 7 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

a Texas Corporation authorized to do business in California; JOSHUA ANDREWS, an individual; and DOES 1 through 100, inclusive, Defendants.

Page ___2___ of ___2___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

## ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form    Save this form    Clear this form

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JAN 15 2021

By: _____
GLORIA M. PORTILLO, DEPUTY

CODY J. SHAVER, Esq. (SBN 319362)
**SHAVER LEGAL, APC**
4473 Main Street
Riverside, CA 92501
Phone: (800) 672-4159
Facsimile: (951) 848-9489
Email Address: cshaver@shaverlegal.com

Attorney for Plaintiff
MELISSA SHROPSHIRE and BRYAN SHROPSHIRE

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN BERNARDINO – HALL OF JUSTICE

## UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| MELISSA SHROPSHIRE, an individual, and BRYAN SHROPSHIRE, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN SECURITY INSURANCE COMPANY, a Delaware corporation, authorized to do business in California; RIMKUS CONSULTING GROUP, INC. a Texas Corporation authorized to do business in California; JOSHUA ANDREWS, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | ) CASE NO. **CiV SB  2 1 0 2 6 8 7**<br>)<br>)<br>) **COMPLAINT FOR DAMAGES FOR:**<br>)<br>) 1. **BREACH OF CONTRACT;**<br>) 2. **BREACH OF THE IMPLIED**<br>) **COVENANT OF GOOD FAITH**<br>) **AND FAIR DEALING;**<br>) 3. **NEGLIGENT**<br>) **MISREPRESENTATION OF**<br>) **MATERIAL FACTS; and**<br>) 4. **NEGLIGENT INTERFERENCE**<br>) **WITH PROSPECTIVE ECONOMIC**<br>) **ADVANTAGE**<br>)<br>)<br>) **DEMAND FOR JURY TRIAL**<br>)<br>)<br>) |

Plaintiffs, MELISSA SHROPSHIRE AND BRYAN SHROPSHIRE, ("Plaintiffs") come

now and allege the following:

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL
- 1 -

## **PARTIES**

1.     Plaintiffs own and/or have an insurable interest in real property located at 3437 Seymour Road, Running Springs, County of San Bernardino, State of California, 92382 (the "Property").

2.     Plaintiffs are informed and do believe and based thereon allege that Defendant American Security Insurance Company ("Assurant" or "Defendant") is a corporation duly formed under the laws of the State of Delaware and authorized to do business in the State of California as an insurer.

3.     Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendant RIMKUS CONSULTING GROUP, INC. ("Rimkus") was and is a corporation formed under the laws of the State of Texas and authorized to do business in the State of California.

4.     Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendant JOSHUA ANDREWS ("Andrews") was and is an individual residing and working in the State of California as a claims adjuster for Assurant.

5.     Plaintiffs allege that Plaintiffs are ignorant of the identity and capacity of Defendants designated as Does 1 through 100, inclusive, whether individuals, corporations, partnerships or otherwise, and as such are fictitious names of Defendants whose true names are, at this time, unknown to Plaintiffs. Plaintiffs are informed, believe, and thereon allege that each of said fictitiously-named Defendants contributed to the damages herein alleged and Plaintiffs will name such Defendants when their identities have been ascertained. Furthermore, Plaintiffs allege that the DOE Defendants in this action committed the same or similar acts alleged as the named Defendants in these alleged causes of action. Therefore, all acts alleged to have been committed by the named Defendants are also alleged to have been committed by the DOE

SHROPSHIRE COMPLAINT FOR DAMAGES.  DEMAND FOR JURY TRIAL

1   Defendants. Plaintiffs are informed, do believe and thereon allege that each of the Defendants is

2   the agent, joint venturer and/or employee of each of the remaining Defendants and in doing the

3   things hereinafter alleged, each was acting within the course and scope of said agency,

4   employment and/or joint venture with the advance knowledge, acquiescence or subsequent

5   ratification of each and every remaining Defendant.

6

7   ## VENUE AND JURISDICTION

8       6.    This Court has jurisdiction over this matter because the real property of Plaintiffs

9   affected by Defendants' conduct is found within this venue and the damages sought are in excess

10  of $25,000.

11

12  ## GENERAL BACKGROUND FACTS

13      7.    Plaintiffs allege that prior to December 31, 2019, Plaintiffs became bound by an

14  insurance policy issued by Assurant.  The policy number was and is CHH023841806 (the

15  "Policy").  A copy of the Policy is appended hereto as Exhibit **A.**

16      8.    Plaintiffs allege that on or about December 31, 2019, the Property sustained water

17

18  damage, which severely damaged the interior of the Property. More specifically, the water

19  damage occurred when the plumbing system failed and released a large amount of water into all

20  rooms of the Property. Plaintiffs allege that a hot water line burst underneath the Property and

21  permitted steam to saturate the interior walls, flooring, and other components of the Property.

22      9.    Plaintiffs allege that the damages were promptly reported to Assurant pursuant to

23

24  the conditions of the Policy and a claim was opened by Assurant, claim number 00102639317

25  (the "Claim")

26      10.    Plaintiffs allege that Assurant assigned the loss to Joshua Andrews ("Andrews"),

27  a claims adjuster with Assurant, who was tasked with adjusting the loss and issuing indemnity

28  for Plaintiffs' loss.

SHROPSHIRE COMPLAINT FOR DAMAGES.  DEMAND FOR JURY TRIAL

- 3 -

11. Plaintiffs allege that Andrews sent out Servpro of South Redlands/Yucaipa Servpro of North Riverside ("Servpro"), who inspected the loss and set up equipment within the interior of the Property. The equipment was set up for five days in order to try and dry out the property.

12. Plaintiffs allege that Servpro advised Plaintiffs on January 2, 2020, that Servpro would not place drying equipment under the Property, where the loss originated as it would not do any good due to the amount of moisture present from the loss. Additionally, according to Servpro, the natural moisture within the soil would not permit the area to dry out properly and therefore, there was no need to install equipment under the Property. Plaintiffs allege that Servpro was notified that the loss originated there and that the insulation under the Property needed to be removed in order to protect the flooring from further damages however, Servpro, refused to investigate and remove the saturated insulation from underneath the Property as requested by Plaintiffs.

13. Plaintiffs allege that on or about January 3, 2020, Plaintiffs notified Andrews of Servpro's refusal to go under the Property and remove the saturated insulation. Andrews informed Plaintiffs that he was in agreement with Servpro that drying under the Property was not needed and that only the interior drywall needed to be removed.

14. Plaintiffs allege that on January 4, 2020, Plaintiffs purchased their own drying equipment to try and dry out the area underneath the Property where the loss originated. Plaintiffs allege that on January 7, 2020, Plaintiffs contracted with laborers on their own to assist Plaintiffs in crawling underneath the buildup area, which was approximately two feet high, and removed the saturated insulation from under the Property. Plaintiffs continued to have drying equipment set to try and dry the area for several days.

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL
-4-

15.   Plaintiffs allege that on or about January 13, 2020, Plaintiffs spoke with Andrews who advised them that they needed to retain Servpro to complete the demolition of the wet drywall within the Property. Plaintiffs further allege that they were not comfortable retaining Servpro as Servpro refused to dry out the origination source and refused to give a written estimate as to what areas of the Property would be demolished. All that Plaintiffs were aware of is that Servpro wanted to remove the wet drywall inside the Property and continued to refuse to address the insulation and wet areas underneath the Property which was causing damage to the flooring and subflooring. Plaintiffs further allege that they requested for Andrews to have Servpro provide an estimate in writing that included the removal of the saturated insulation in the crawlspace so that the flooring could be protected from further damages. However, a written estimate was never provided and Servpro and Assurant never approved the removal of the insulation from under the crawlspace.

16.   Plaintiffs allege that the laborers Plaintiffs contracted with arrived at the Property and began removing insulation from the crawlspace on January 16, 2020 and the drying equipment placed there by Plaintiffs remained in place.

17.   Plaintiffs allege that on February 5, 2020, Plaintiffs finally received a written estimate from Servpro; however, the estimate did not include removal of the insulation from the crawlspace so Plaintiffs retained their own expert to advise them as to what activities would be required for the Property to be protected from the water intrusion. Plaintiffs further allege that the water damage expert they retained opined that the insulation in the crawlspace should have been initially removed and that it was not possible to ensure that the flooring would be protected from further damages by a failure to remove the saturated insulation and properly dry out of the crawlspace as that was where the loss was most substantial. The expert retained by Plaintiffs informed Plaintiffs that the damage to the flooring was a direct result of the failure to promptly

SHROPSHIRE COMPLAINT FOR DAMAGES.  DEMAND FOR JURY TRIAL
- 5 -

remove the insulation from under the build-up/crawl space and that the crawlspace should have had drying equipment placed there immediately after the loss occurred.

18.    Plaintiffs allege that a second inspection by an Assurant field representative was performed where damage to the flooring was identified by the field adjuster, as well as other items that were missed from the initial inspection. The field adjuster, Geoff Altman, drafted an estimate of repairs for the identified damages for approximately $80,000.00, or approximately $60,000.00 more than was initially provided to the Plaintiffs for their damages.

19.    Plaintiffs allege that Andrews contacted the Plaintiffs and advised that he was rejecting all of the additional items as identified by the field adjuster on the basis that it was his belief that the damages were a result of the failure to mitigate the damages. Plaintiffs advised Andrews that there was no failure to mitigate the damages in that the damages were a result of his and Assurant's failure to address the moisture in the crawlspace, as Plaintiffs had urged Assurant to address since the inception of the claim. Further, Plaintiffs allege that Andrews was notified that there was no failure to mitigate these damages as they retained their own contractors and purchased their own drying equipment to address the moisture under the building since both Servpro and Assurant refused to address these damages which consisted of damage to the flooring. Plaintiffs advised Assurant, by way of its employee, Andrews, that the moisture in the walls, which needed removal was not the issue which caused the flooring to be damaged but was a result of the failure to properly dry out the crawlspace. At that time, Plaintiffs offered Assurant, by way of its employee, Andrews, to submit to a recorded statement to provide information to Assurant addressing the dry out of the crawlspace that was performed by Plaintiffs and their contract employees.

20.     Plaintiffs allege that in response to the discussion with Andrews, Assurant made the decision to send the file to Rimkus Consulting Group Inc. ("Rimkus") for their review of the issue and if additional indemnity was owed to Plaintiffs for the flooring.

21.     Plaintiffs allege that Rimkus produced a report, by way of its employee Tamiko D. Therrien, dated October 19, 2020. The report stated that the information gathered was based on photographs of the loss, the estimates and an interview with Andrews to obtain the facts of the loss. The report failed to identify that any information was gathered from the Plaintiffs regarding the work they had performed or Plaintiffs' concerns that neither Assurant, nor Servpro, were permitting a proper drying process to be performed in the crawlspace. The report erroneously identified that Assurant approved mitigation services which was and is false. Assurant did not permit any mitigation services to be performed in the crawlspace, which is the cause, according to the Plaintiffs' expert, of the additional water damage to the flooring of the Property. Rimkus made no effort to contact the expert retained by the Plaintiffs, the field adjuster, the Plaintiffs, nor any other person, other than Andrews, to obtain additional information regarding the facts of the loss.

22.     Plaintiffs allege that on October 30, 2020, Plaintiffs contacted Andrews and reminded Andrews that Plaintiffs did not prevent or object to Servpro from performing dry out services but that Servpro refused, and Assurant agreed, that it was not required to place drying equipment or remove wet insulation from under the Property. Plaintiffs further inquired from as to the reason this information was not provided to Rimkus during the interview Rimkus had with Andrews. Plaintiffs additionally notified Andrews that Plaintiffs were able and willing to provide a recorded statement and provide information to substantiate that despite Servpro's refusal to dry out the crawlspace, Plaintiffs performed that work on their own as it was needed to ensure the Property was protected, as confirmed by the expert retained by Plaintiffs. Plaintiffs directly

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL
- 7 -

1  advised Andrews that the information provided to Rimkus was not accurate nor factual. The

2  October 30, 2020 correspondence also raised a concern that Andrews had withheld information

3  from Rimkus as well as a concern that all of the information provided to Rimkus was from

4  Andrews. Plaintiffs also queried Andrews about the reason for Rimkus' failure to contact

5  Plaintiffs about the loss because Andrews had failed and refused to provide Plaintiffs'

6

7  information to Rimkus for their review and analysis. In the October 30, 2020 correspondence

8  Plaintiffs also requested photos of the loss from the initial inspection.

9      23.   Plaintiffs allege that on November 5, 2020, Andrews responded to Plaintiffs'

10  October 30, 2020 correspondence, by refusing to answer any of the inquiries presented, refused

11

12  to provide any photos of the loss, and advised Plaintiffs that the file was closed.

13      24.   Plaintiffs allege that as a result of the conduct of Defendants alleged herein and

14  further in this Complaint, Plaintiffs had no choice but to bring this action to redress their

15  damages against Defendants.

16

17          **FIRST CAUSE OF ACTION**

18      **FOR BREACH OF WRITTEN CONTRACT**

19  **AGAINST DEFENDANTS ASSURANT AND DOES 1 THROUGH 10, INCLUSIVE**

20      25.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in

21  paragraphs 1 to 24 of the Complaint as though fully set forth herein.

22      26.   Plaintiffs allege that at all material times herein, Plaintiffs had a homeowners'

23  policy of insurance number CHHO23841806, with Assurant. The Policy was in effect on the

24  date of loss. [Exhibit A.]

25      27.   Plaintiffs paid all insurance premiums in a timely fashion and have met and

26  complied with all necessary conditions of the policy and/or were excused from certain conditions

27  of the policy due to Defendant breach.

28      28.   Plaintiffs allege that by its terms the Policy promised to Plaintiffs, in relevant part,

SHROPSHIRE COMPLAINT FOR DAMAGES.  DEMAND FOR JURY TRIAL

that Assurant would provide coverage to Plaintiffs, including for the structure, loss of use and other coverages, should the Property insured by the Policy sustain accidental direct physical loss, unless the loss was excluded under the Policy.

29.   Plaintiffs allege that from and after November 5, 2020, Assurant breached the terms of the Policy when it failed and refused to indemnify Plaintiffs for the damage to the Property arising from the December 31, 2019 water loss when a hot water line burst in the crawlspace which permitted a large amount of water and steam to intrude into the Property affecting the walls, floor framing, insulation, and flooring. Plaintiffs further allege that Assurant also breached the Policy of insurance by refusing to indemnify Plaintiffs for proper mitigation to be performed and then denied Plaintiffs indemnity for damages that resulted from the improper drying methods that were approved by Assurant.

30.   Plaintiffs alleges that they have complied with all the applicable and relevant parts of the Policy with the exception of compliance with such portions of the Policy excused as a result of Assurant's breach.

31.   Plaintiffs allege that as a direct consequence of the breach of the Policy issued by Assurant, Plaintiffs have sustained damages in a sum not less than $150,000 according to proof at trial.

## SECOND CAUSE OF ACTION

## FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

## AGAINST DEFENDANTS ASSURANT AND DOES 11 THROUGH 25, INCLUSIVE

32.   Plaintiffs reallege and incorporates by reference the allegations contained in paragraphs 1 to 31 of the Complaint as though fully set forth herein.

33.   Plaintiffs allege that implied in every contract is a covenant that the parties to the contract will deal fairly and in good faith with one another in an effort to satisfy the goals of the contract as well as prevent harm to the parties to the contract.

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL

34.     Plaintiffs allege that from and after November 5, 2020, and continuing thereafter, Assurant breached the implied covenant of good faith and fair dealing when it used its superior knowledge, experience, and expertise in the insurance industry and claims adjusting to engage in the following acts:

a.      Failure to respond to pertinent correspondences that warranted a response which pertained to coverage under Cal Ins. Code Tit. 10 § 2695.5(b) as evidenced by Assurant's complete failure to respond timely, and in accordance with requirements to Plaintiff's Claim, to Plaintiffs request to be apprised as to why pertinent information provided to Assurant by Plaintiffs were being ignored as well as their request for photographs taken of the loss as evidenced by the written correspondence to Assurant on October 30, 2020;

b.      Misrepresenting pertinent insurance policy provisions relating to any coverage issue by fabrication of facts to support an exclusion cited in the Policy;

c.      2695.7(d) (requiring an insurer to "diligently pursue a thorough, fair and objective investigation."), which Assurant failed to do when Assurant failed to contact the Plaintiff or any percipient witnesses to the issue which would have clearly and unequivocally negated the basis for denial used by Assurant and Assurant's failure, by way of its employee, Andrews, to provide pertinent information to Assurant's retained experts which would have negated the conclusion of reached by said expert which was detrimental to Plaintiffs;

SHROPSHIRE COMPLAINT FOR DAMAGES.  DEMAND FOR JURY TRIAL
- 10-

d.   2695.7(h) (requiring an insurer to promptly pay "amounts not reasonably in dispute"), which Assurant failed to do when Assurant failed to indemnify Plaintiff for the additional damages warranting coverage under the Policy of insurance;

e.   failure to comply with  DOI regulation 2695.7 (b) (1) which states the following: (1) Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to the claim. Every insurer that denies or rejects a third-party claim, in whole or in part, or disputes liability or damages shall do so in writing;

f.   *Penal Code* section 550;

g.   Various other components of the 1993 Department of Insurance Regulations.

35.   Plaintiffs alleges that during the course of the adjustment of the claim, Assurant did not conduct a thorough, unbiased, and objective investigation. Assurant received numerous requests from Plaintiffs to have the vendor Assurant referred, Servpro, mitigate the damages in the crawlspace and Assurant refused. When the moisture in this area caused additional damages to Plaintiffs Property, Assurant placed blame onto Plaintiffs and denied the damages. Additionally, Assurant was notified that a qualified water damage expert was retained by Plaintiffs, who produced information as to the issues involved with the failure of Assurant to

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL
- 11-

approve drying out the crawlspace, of which Assurant never investigated and made no efforts to contact this water damage expert nor did Assurant notify Rimkus of this pertinent information concerning the loss. Plaintiffs further allege that Assurant concealed information upon receipt that reasonably supported Plaintiffs claim, withheld information requested by Plaintiffs in order for Plaintiffs to investigate their own Claim, and refused to produce responses to justify why information was concealed and not produced to both Assurant's agents as well as to Plaintiffs.

36.     Plaintiffs allege that Assurant continued this wrongful conduct and failure to conduct a thorough investigation of the Claim, when Assurant was notified of pertinent information concerning the efforts Plaintiffs put forth to mitigate the saturation under the Property. As opposed to sitting back and doing nothing while Assurant refused to indemnify for the saturated subflooring, Plaintiffs personally crawled under the small two-foot opening and removed the wet insulation on their own. Upon notifying Assurant of these efforts, Assurant concealed this information when they relayed their version of the facts of the loss to Rimkus for an expert opinion. When said expert opinion was produced by Rimkus, based upon the limited information produced by Assurant, Plaintiffs inquired as to why Assurant had failed to advise Rimkus that the Plaintiffs mitigated the crawlspace issue. Assurant refused to respond and refused to remedy the misinformation provided to their vendor, Rimkus.

37.     Plaintiffs allege that Assurant is required to provide a complete copy of the Claim file to Plaintiffs upon request, inclusive of all communications, reports, drawings, reports and third-party findings, pursuant to Cal. Ins. Code § 2071, and failed to do so. Plaintiffs requested a copy of the Rimkus report be produced to them which Assurant refused to provide until Plaintiffs produced language contained in the code substantiating their request. Plaintiffs made requests for photos of the Property, taken by agents of Assurant, which Assurant refused and continues to refuse to produce.

38.     Plaintiffs allege that the Policy required Assurant to fully and fairly adjust and evaluate the loss; and required Assurant to act in accordance with the implied covenant of good faith and fair dealing and pursuant to California law.  Furthermore, Assurant and its adjusters working on its behalf were required to comply, not only with the policy terms, but with the 1993 Department of Insurance regulations relating to claims handling, as previously set forth in this Complaint. Assurant has and continues to delay indemnity for damages sustained to the Property which resulted from the original was loss as well as Assurant and their agent's refusal to indemnify for property mitigation of the Property.

39.     Plaintiffs allege that water damage to the flooring is covered under the Policy and that Assurant held the burden of proving that the loss was excluded under the Policy; however, Assurant did not satisfy this burden. What Assurant did was conceal information in order to get their expert Rimkus to substantiate the denial of the Claim. Had Assurant provided Rimkus with accurate information, and had Assurant ensured that their agent, Rimkus, conducted a fair and thorough investigation which would have included interviews of percipient witnesses and investigation into all facts of the loss, Plaintiffs' claim for the additional damages would not have been denied. When Assurant was asked why information produced to Assurant, which would have substantiated Plaintiffs claim for damages, was not provided to their agent, Assurant refused to respond further, thus concealing information on Plaintiffs' claim.

40.     Plaintiffs allege that Plaintiffs were harmed as a result of the failure of Assurant to provide a fair and thorough investigation into Plaintiffs' claim.

41.     Plaintiffs allege that had Assurant performed a fair and thorough investigation Plaintiffs would not have been harmed and would have received the benefits of the Policy.

42.     Plaintiffs allege that Assurant has and continues to refuse to provide insurance benefits for the cost of repair of the damage caused by the water loss to the Property.

43.     Plaintiffs allege that courts have determined that an insurance carrier acts in bad faith when they fail to fully and thoroughly investigate an insured's claim. Here, Assurant failed to conduct a reasonable investigation into information that was readily available to them, such as percipient witnesses, expert reports, and statements and factual evidence available to Assurant from their own insured. Not only has Assurant refused to include this pertinent information in their investigation of the Claim, but it concealed this same information when they produced information to their agents who were assisting Assurant with the Claim by way of review of the facts. *Chateau Chamberay Homeowners Association v. Associated International Ins. Co.* (2001) 108 Cal.Rptr.2d 776.

44.     Plaintiffs allege that the failure of Assurant to investigate information or convey information to their agents who were reviewing the facts of the loss to determine the level of indemnity owed by Assurant, is evidence of bad faith conduct by a showing that the denial issued by Assurant was unreasonable based upon the failure to investigate facts when such investigation would in fact establish the existence of coverage. *Chicago Title Insurance Co. v. AMZ Ins. Services* (2010) 188 Cal.App.4th 401.

45.     Plaintiffs allege that an insurer cannot reasonably and in good faith deny payments to its insured without fully investigating the grounds for its denial (*Jordan v. Allstate Ins. Co.,* 148 Cal. App. 4th 1062, 1072, 56 Cal. Rptr. 3d 312 (2nd Dist. 2007). Assurant did just that. Assurant issued a denial of the additional reported damages and damages to the flooring and not only failed to investigate the information provided to Assurant by Plaintiffs, in that the Plaintiffs mitigated the saturated subflooring and insulation but Assurant concealed this information when conveying the facts of the loss to their agent (Rimkus) who was tasked with investigating the facts of the loss to determine if additional indemnity was owed by Assurant for these damages. Assurant continued this conduct when Assurant refused to produce information

in their possession which reasonably supported the extent of Plaintiffs Claim. Not only did Assurant look the other way when provided information that supported indemnity for the additional damages claimed, but Assurant concealed this information and refused to produce it to their vendors or the Plaintiffs. This dishonest withholding of information that was material to the facts of the loss, and which supported and supports coverage for the additional damages that were submitted by Plaintiffs is evidence of bad faith conduct. *Amerigraphics, Inc. v. Mercury Cas. Co.*, 182 cal. App. 4th 1538, 1559-1560 (2nd Dist. 2010).

46.     Plaintiffs allege that the basis for the denial of the supplemental damages to the flooring was based upon a failure to mitigate the damages. However, Assurant received information from the Plaintiffs proving that this position was false. Assurant continued to deny the Claim when the factual evidence provided contradicted and extinguished the basis for denial. This type of conduct has been found to be unreasonable and evidence of bad faith. *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 721, 68 Cal. Rptr. 3d 746, 171 P.3d 1082 (2007). An insurer cannot ignore facts submitted by an insured as such conduct is inconsistent with the implied covenant of good fait hand fair dealing.

47.     Plaintiffs allege that bad faith can be found when an insurer fails to consider, or seek to discover, evidence relevant to the issues of liability and damages (Mariscal v. Old republic Life Ins. Co., 42 cal. App. 4th 1617, 50 Cal. Rptr. 2d 224 (2d Dist. 1996)) here not only did Assurant fail to consider the factual evidence that Plaintiffs mitigated the damages when both Servpro and Assurant refused indemnity, but Assurant concealed this information and failed to convey the same to agents tasked by Assurant to investigate the facts of the loss to determine liability. When asked why this information was concealed, Assurant refused to provide a response to Plaintiffs.

48.     Plaintiffs allege that Assurant failed to provide as much consideration to Plaintiffs' interests as it did their own upon the showing that Assurant made no effort to produce information that reasonably benefitted Plaintiffs and when Assurant was in receipt of information provided to them by Plaintiffs, Assurant concealed this information in order to protect its financial interests instead of Plaintiffs' financial interests. The courts have determined that it is a showing of bad faith wherein an insurer fails to interview witnesses they are aware of, and have information that supports an insured's claim, such as Assurant's failure to investigate the information provided by the Plaintiffs, and Assurant's concealment of information when Assurant produced facts to their claims' agents. *Frommoethelydo v. Fire Insurance Exchange* (1986) 42 Cal.3d 208, 214-215.

49.     Plaintiffs allege that as a direct and proximate result of Assurant's breach of the implied covenant of good faith and fair dealing, Plaintiffs have sustained damages in a sum not less than $150,000 according to proof at trial as well has having to retain counsel to pursue this action against Assurant. As such, Brandt fees in a sum according to proof at trial are also warranted.

50.     Plaintiffs allege that per Cal. Civil Code §3294(c), Assurant's conduct was and is oppressive, fraudulent, malicious, and despicable in that Assurant concealed information provided to Assurant by Plaintiffs that supported the extent of Plaintiffs' Claim. Assurant refused to investigate information that supported Plaintiffs' Claim when Plaintiffs informed Assurant that they had retained their own water damage expert. Assurant's refusal to review and/or consider any information produced by said expert, refusal to consider the information upon receipt of factual information in support of Plaintiff's Claim, and Assurant's refusal to produce information to Plaintiffs despite having a duty to do so are all hallmarks of oppressive, malicious and fraudulent conduct. When Assurant was specifically requested in writing as to why

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL
- 16-

information produced by Plaintiffs were not conveyed to Rimkus, Assurant refused to provide a response to Plaintiffs for that decision which supports the allegation that the concealment of this material information was done intentionally to harm Plaintiffs.

51.     Plaintiffs allege that Assurant undertook such actions with a complete and conscious disregard for Plaintiffs' legal and property rights. Section 3294(c) states the following: "As used in this section, the following definitions shall apply:

(1) *"Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."* In the context of the facts of this complaint, Assurant's intentional refusal to investigate information that supported coverage can only be described as conduct purposed in denial of the Claim. This failure to investigate, as required by the insurance code, shows conduct intended by Assurant to cause injury to the Plaintiffs by denial of their Claim. This malicious conduct continued when Assurant concealed facts when having the matter reviewed by their retained expert to determine the extent of damages.  There can be no reasonable basis for Assurant to refuse to consider information provided to them by their insured and then conceal said information when investigating the Claim. Had this been a mere mistake by Assurant, in that they forgot to include the information provided by Plaintiffs that negated Assurant's basis for denial, that mistake could have been remedied upon notification by Plaintiffs that Assurant concealed factual information from their agents. However, Assurant did not remedy this issue and instead Plaintiffs when asked why the information was concealed.

(2) *"Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."* Assurant showed conduct becoming of oppression when Assurant continues to ignore information produced by Plaintiffs that support coverage for their Claim. Not only has Assurant continued to ignore this information but

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL
- 17-

Assurant continues to deny the production of any information in their possession that may negate

the coverage decision made by Assurant. Plaintiffs had made repeated attempts to be provided

with the Claim file however, Assurant has refused to produce all information required to be

produced under the insurance code. Plaintiffs, who live in the mountains have been forced to

reside in a home lacking proper insulation with no explanation provided by Assurant addressing

why this insulation is not being covered.

*(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact*

*known to the defendant with the intention on the part of the defendant of thereby depriving a*

*person of property or legal rights or otherwise causing injury."* Per the allegations of the

complaint, Assurant concealed information that was material to the Claim. Assurant was advised

that mitigation of the crawlspace was performed by Plaintiffs due to Assurant and Servpro

refusing to mitigate this area. When Assurant denied the damages resulting from an alleged

failure to mitigate this area, Plaintiffs advised Assurant that they performed the mitigation on

their own. In response, Assurant retained a third-party expert to review the facts of the loss to

determine coverage. When the third-party expert concluded that the denial was proper due to a

lack of mitigation, Assurant was asked why the information concerning mitigation was not

relayed to their expert however, Assurant refused to respond and refused to remedy the

misinformation provided to their expert causing substantial hardship to Plaintiffs.

     52.    Plaintiffs allege that as a result of Assurant's fraudulent, oppressive and malicious

conduct alleged herein, punitive damages in a sum according to proof at trial is warranted as to

Assurant. Plaintiffs further allege that the conduct of Assurant was and is ratified and authorized

by its management which as a matter of practice and course deny all such claims out of hand.

///

## THIRD CAUSE OF ACTION

## FOR NEGLIGENT MISREPRESENTATION OF MATERIAL FACTS

## AGAINST DEFENDANTS JOSHUA ANDREWS AND DOES 26 THROUGH 50,

## INCLUSIVE

53.     Plaintiffs reallege and incorporates by reference the allegations contained in paragraphs 1 to 52 of the Complaint as though fully set forth herein.

54.     Plaintiffs allege that Defendant Joshua Andrews ("Andrews") was and is an employee of Assurant who was assigned to handle the adjustment of Claims submitted to Assurant.

55.     Plaintiffs allege that as an adjuster employed by the insurance company, Andrews has a "special relationship" and therefore, a duty to communicate accurate information to the insured. *Bock v. Hansen*, 225 Cal. App. 4th 215, 229, 170 cal. Rptr. 3d 293 (1st Dist. 2014).

56.     Plaintiffs allege that during the course of Andrews' duties as claims adjuster Andrews made representation of facts that Andrews knew or had reason to know were in fact false when he concealed and omitted facts that were material to the Claim submitted by Plaintiffs. Plaintiffs further allege that when Plaintiffs submitted material facts about the Claim to Andrews, Plaintiffs had a reasonable and justifiable presumption and reliance upon Andrews' position as the claims adjuster for their Claim in that he would convey all such material facts to Rimkus for the benefit of Plaintiffs as the insureds. Plaintiffs' reliance was both justifiable and reasonable because Plaintiffs had no reason to believe that Andrews would work against their interest as the policy holders.

57.     Plaintiffs allege that Andrews, however, omitted information about the Claim when relaying material facts pertaining to Plaintiffs' Claim to the third-party expert Rimkus, who was tasked with reviewing the facts of the loss in order to determine if additional indemnity for

damages sustained due to saturation in the sub-flooring and wet insulation should be covered pursuant to the facts of the Claim.

58.     Plaintiffs allege that Andrews was the only person who conveyed facts to Rimkus for their review and assessment of the Claim as Andrews made no efforts to provide contact information to Rimkus for other persons who Andrews knew had material facts of the loss in their possession. Persons, such as the Plaintiffs, nor their expert who investigated the loss were contacted to produce facts by either Andrews or Rimkus. Andrews knew that the facts presented by him to Rimkus would be the sole factual evidence being considered by Rimkus in order to make their determination if the facts of the loss conformed to facts warranting coverage for Plaintiffs' damages under the Policy of insurance.

59.     Plaintiffs allege that Rimkus, in their report, dated October 19, 2020, specifically identified that their report was based upon the facts as provided to them by Andrews on September 3, 2020, wherein the report identified that Rimkus interviewed Mr. Joshua Andrews, the insurance adjuster to get an understanding of the loss.

60.     Plaintiffs allege that the evidence produced in the report shows that Rimkus relied upon the information provided to them by Andrews in order to come to their conclusion as it pertained to the facts of the loss. Plaintiffs further allege that as a result of the information provided by Andrews, indemnity for additional damages owed to Plaintiffs were denied based upon the information provided by the Rimkus report.

61.     Plaintiffs allege that during the adjustment of the Claim, Plaintiffs notified Andrews that mitigation was performed at the Property and that Andrews' report to Rimkus that mitigation was not completed was factually incorrect. All of this information was known to Andrews during the adjustment of the Claim.

62.     Plaintiffs allege that from and after November 5, 2020, the falsity of Andrews' representations and the concealment of Andrews' failure to pass on information and facts to Rimkus directly material to Plaintiffs' Claim came to light when upon receipt of the report produced by Rimkus, Plaintiffs noticed that there were no facts showing that Plaintiffs mitigated the areas of the Property that either Servpro or Assurant refused to mitigate. Plaintiffs requested in writing to know why this information was not produced to Rimkus as the basis of their report was based upon the inaccurate information that mitigation was not performed. Plaintiffs further allege that Andrews refused to respond to this inquiry made by Plaintiffs and merely advised Plaintiffs that the Claim was closed.

63.     Plaintiffs allege that in the matter of *Bock v. Hansen*, 225 Cal.App.4th 215, 222 (2104) a cause of action for negligent misrepresentation of material facts may lie against a claims' adjuster where the adjuster withholds facts from a retained expert in order to influence the experts written report. Here, Andrews knew or should have known that withholding information from Rimkus about the Claim would adversely affect Plaintiffs' right to be indemnified for their losses. Plaintiffs further allege that not only did Andrews refuse to remedy the mistaken conveyance of information but upon being notified that Andrews made a mistake in the information conveyed to Rimkus, Andrews refused to remedy the mistake he was apprised of a second time. Plaintiffs do believe that Andrews held a duty to remedy the false information provided to Rimkus and had a duty to remedy it.

64.     Plaintiffs allege that had Andrews remedied the false information provided to Rimkus, the Rimkus report specifically provided that any new information would be reviewed and that Rimkus had the right to determine the impact, if any, the new information may have on their opinions and conclusions and that Rimkus may revise the opinions and conclusions if necessary and warranted. Plaintiffs allege that it is reasonable to believe that had Andrews

provided the accurate information, that the Property had been dried out by Plaintiffs, or remedied the false information upon being apprised a second time by Plaintiffs, the basis for the conclusion in the Rimkus report that negated coverage, would have been different.

65. Plaintiffs allege that as a direct and proximate result of the negligent misrepresentation of material facts by Andrews, Plaintiffs have sustained damages in a sum not less than $150,000 according to proof at trial.

## FOURTH CAUSE OF ACTION

## NEGLIGENT INTEFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

## AGAINST RIMKUS CONSULTING GROUP, INC. AND DOES 51 TO 75, INCLUSIVE

66. Plaintiffs reallege and incorporates by reference the allegations contained in paragraphs 1 to 65 of the Complaint as though fully set forth herein.

67. Plaintiffs allege that Rimkus was retained by Assurant to investigate the facts of the loss and determine if the facts provided warranted additional indemnity owed under the Policy of insurance.

68. Plaintiffs allege that at all times Rimkus knew that its consulting and investigation services were retained by Assurant in relation to Plaintiffs' Claim and the Policy of insurance under which Plaintiffs made their Claim. As such, Rimkus knew and had reason to know that Plaintiffs were engaged in a contractual relationship with Assurant from which Plaintiffs stood to gain benefits under the Policy for the losses sustained to the Property as a result of the December 31, 2019, water loss.

69. Plaintiffs allege that Assurant retained Rimkus in order to determine whether the damages being reported by Plaintiffs could have been mitigated had the homeowners allowed dry-out services to remove the moisture from the affected areas. The report specifically states that the report was prepared for the exclusive use of Assurant Insurance Company and was not intended for any other purpose.

70.     Plaintiffs allege that the report from Rimkus caused Assurant to deny benefits under the Policy to Plaintiffs with respect to the Claim since Rimkus relied on facts that were provide to it by Assurant's adjuster Andrews rather than facts from Plaintiffs and the experts Plaintiffs retained to mitigate their damages.

71.     Plaintiffs allege that Rimkus had a duty to investigate all facts pertaining to the Claim by questioning Plaintiffs and their retained experts rather than relying primarily on Andrews' representations of the facts which were false and inaccurate.

72.     Plaintiffs allege that this failure on the part of Rimkus to conduct a proper investigation into the loss and the failure of Rimkus to make any effort to gather pertinent information concerning the loss resulted in Assurant refusing to perform under the Policy and depriving Plaintiffs of the prospective benefits they would have had under the Policy had Rimkus conducted a proper investigation of the facts of the Claim. Plaintiffs further allege that as a well-known investigative agency with respect to insurance claims, Rimkus knew and had reason to know that it held a duty to conduct a thorough investigation of the facts of the Claim and thereafter issue a report based on such facts. As such, Rimkus knew, or should have known, that their involvement was critical to Plaintiffs receiving proper indemnity under the Policy.

73.     Plaintiffs allege that as a result of Rimkus' actions, Plaintiffs have sustained compensatory damages in a sum not less than $150,000 according to proof at trial.

**WHEREFORE,** PLAINTIFFS PRAYS FOR JUDGMENT AGAINST DEFENDANTS, AND EACH OF THEM, AS FOLLOWS:

**AS TO THE FIRST CAUSE OF ACTION**

1.      For compensatory, general, consequential, and incidental damages, in an amount according to proof, but not less than $150,000;

2.      For pre-judgment and post-judgment interest from and after November 5, 2020, at the legal rate;

3.      For reasonable costs of suit incurred; and

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL
- 23 -

4.    For any other relief the Court may deem just and proper.

**AS TO THE SECOND CAUSE OF ACTION**

1.    For compensatory, general, consequential, and incidental damages, in an amount according to proof, but not less than $150,000;

2.    For pre-judgment and post-judgment interest from and after November 5, 2020, at the legal rate;

3.    For attorney's fees per *Brandt v. Superior Court* (1985) 37 Cal.3d 813;

4.    For exemplary/punitive damages according to proof at trial;

5.    For reasonable costs of suit incurred; and

5.    For any other relief the Court may deem just and proper.

**AS TO THE THIRD CAUSE OF ACTION**

1.    For compensatory, general, consequential, and incidental damages, in an amount according to proof, but not less than $150,000;

2.    For pre-judgment and post-judgment interest from and after November 5, 2020, at the legal rate;

3.    For reasonable costs of suit incurred; and

4.    For any other relief the Court may deem just and proper.

**AS TO THE FOURTH CAUSE OF ACTION**

1.    For compensatory, general, consequential, and incidental damages, in an amount according to proof, but not less than $150,000;

2.    For pre-judgment and post-judgment interest from and after November 5, 2020, at the legal rate;

3.    For reasonable costs of suit incurred; and

4.    For any other relief the Court may deem just and proper.

SHROPSHIRE COMPLAINT FOR DAMAGES. DEMAND FOR JURY TRIAL

- 24 -

Date: January 14, 2021                           **SHAVER LEGAL, APC**

By:_____
                                                 Cody James Shaver, Esq.
                                                 Attorney for Plaintiffs
                                                 MELISSA SHROPSHIRE
                                                 BRYAN SHROPSHIRE

**DEMAND FOR JURY TRIAL**

    Plaintiffs hereby demand a trial by jury.

Date: January 14, 2021                           **SHAVER LEGAL, APC**

By:_____
                                                 Cody James Shaver, Esq.
                                                 Attorney for Plaintiffs
                                                 MELISSA SHROPSHIRE
                                                 BRYAN SHROPSHIRE

# EXHIBIT A

(Page 1 of 20)

MELISSA SHROPSHIRE
BRYAN SHROPSHIRE
PO BOX 3408
RUNNING SPRINGS CA    92382



BARPAGE.DOC-1113    12    1  0

(Page 2 of 20)

# DECLARATIONS          05/28/19

| American Security Insurance Company<br>A Stock Insurance Company<br>2677 North Main St., Suite 600, Santa Ana, CA 92705<br>Home Office: Wilmington, DE | RENEWAL DECLARATION * * EFFECTIVE 07/15/19 12:01 AM, STANDARD TIME SUPERSEDES PREVIOUS DECLARATION ON BEARING SAME NUMBER FOR THIS PERIOD. |

## YOUR NAME AND MAILING ADDRESS (Named Insured)

MELISSA SHROPSHIRE
BRYAN SHROPSHIRE
PO BOX 3408
RUNNING SPRINGS CA  92382

**HOMEOWNERS POLICY NUMBER**
CHH 0238418  06
**POLICY PERIOD**
**THIS POLICY IS EFFECTIVE**
FROM:  07/15/19          12:01 A.M. Standard Time
TO:  07/15/20          12:01 A.M. Standard Time

## LOCATION OF RESIDENCE PREMISES

3437 SEYMOUR RD
RUNNING SPRINGS CA  82382

**COUNTY:** SAN BERNAR
**SQUARE FOOTAGE:** 2515          **YEAR BUILT:** 1991
**OCCUPANCY:** OWNER          **UNITS:** 1
**CONSTRUCTION TYPE:** FRAME
**ROOF TYPE:** COMPOSITION SHINGLE
**PROTECTION CLASS:** 03
**DISTANCE TO FIRE HYDRANT:** 0001
**DISTANCE TO FIRE DEPARTMENT:** 01

## AGENCY

HUB INTL MIDWEST LIMITED          Number:   0CJ4001
N3310-107
55 E JACKSON BLVD
CHICAGO IL  60604
(800) 795-5382
CHOICE@ASSURANT.COM
CLAIMS PHONE NUMBER: 866-324-6516

## COVERAGES AND LIMITS OF LIABILITY - Coverages are subject to all conditions of this policy

### Section I – Property Coverages

| Description | | Limit of Liability |
|---|---|---|
| Dwelling | Coverage A* | 537,322 |
| Other Structures | Coverage B | 53,732 |
| Unscheduled Personal Property | Coverage C | 268,661 |
| Loss of Use | Coverage D | 107,464 |
| Ordinance or Law | 10% of the amount of Coverage A | 53,732 |

The limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.

* Specified Additional Amount of Insurance for Coverage A - Dwelling is 50% of above stated amount

### Deductible(s)

| Description | Amount |
|---|---|
| All-Perils | 1000 |

### Section II – Liability Coverages

| Description | | Limit of Liability |
|---|---|---|
| Personal Liability | Coverage E | 500,000 |
| Animal liability special limit | | 50,000 |
| Medical Payments to Others | Coverage F | 5,000 |

| PREMIUM SUMMARY | | | |
|---|---|---|---|
| Base Premium | Selected Endorsements | | TOTAL PREMIUM |
| $2,407.00 | +          $334.00 | | $2,741.00 |

**THIS POLICY DOES NOT PROVIDE COVERAGE AGAINST THE PERIL OF EARTHQUAKE OR FLOOD**
**PLEASE KEEP WITH YOUR POLICY**

M6002D0611          INSURED COPY          (SEE REVERSE)

CHOHOMN1.DOC-0611

(Page 3 of 20)

## DECLARATIONS (Continued)

HOMEOWNERS POLICY NUMBER: CHH 0238418 06          POLICY EFFECTIVE FROM: 07/15/19    TO: 07/15/20

---

PREMIUM DISCOUNTS APPLIED TO YOUR POLICY

PROTECTIVE SAFEGUARD,

---

ENDORSEMENTS IN EFFECT

| Endorsement Number | Description | Limits | Premium |
|---|---|---|---|
| HO04070719 | PERSONAL PROPERTY REPLACEMENT COSTS | ** | $241.00 |
| HPC0009E0419 | SPECIFIED ADDITIONAL AMOUNT OF COV A | ** | $49.00 |
| | PERSONAL LIABILITY AND MEDICAL PYMTS | SEE SECTION II | $45.00 |

**See enclosed Endorsement forms for applicable coverage limits.

---

All Forms and Endorsements which are made a part of this policy at time of issuance:

ECAF2520-0502 *, CH0001-0204 *, H00003-0491 *, H00407-0719 *, H00418-0491 *, H00496-0491 *, HO0749-0116 *, H02490-0193 *, HO8504A-0300 *, HO8508-0118 *, HO8513A-0300 *, HO8830-0400 *, HO8850-0903 *, HO8853-0419 *, ILP063-0115 *, NS0019-0111 *, NS0582-0111 *, NIP1982-0213 *, N2252S-0503 *, NS083-0204 *, NS788-0503 *, NS587-0916 *, HPC0009E-0419 *, 439BFUN5-0542 *.

---

Any loss under Section I – Property Coverages – is payable as interest may appear to you and the following listed:

1ST MORTGAGEE

QUICKEN LOANS INC.,
ISAOA
PO BOX 202070
FLORENCE SC   29502
LOAN NO:   3426998441

---

For Questions or Changes Call: 1-877-893-5739
This is not an invoice. Direct all payments to:
ABC, 23552 Network Place, Chicago, IL 80673-1235
For Billing Questions Call: 1-800-370-1996

AUTHORIZED SIGNATURE
Countersignature Date 05/26/19
CA926301.DOC-1002

CHOHOMN1.DOC-0611

(Page 4 of 20)

Mailing Date: 05/28/19

Insureco Agency & Insurance Services, Inc.
P.O. Box 1000
Orange, California 92856-0010

**Agency or Broker**

HUB INT'L MIDWEST LIMITED
N9310-107
55 E JACKSON BLVD
CHICAGO IL  60604

Name and Address of Insured(s):

MELISSA SHROPSHIRE
BRYAN SHROPSHIRE
PO BOX 3408
RUNNING SPRINGS CA  92382

**Policy Number:**
CHH0238418 08

**Property Location**
3437 SEYMOUR RD
RUNNING SPRINGS CA  92382

---

### OFFER OF EARTHQUAKE COVERAGE

YOUR RESIDENTIAL PROPERTY INSURANCE POLICY DOES NOT COVER EARTHQUAKE DAMAGE TO YOUR HOME OR ITS CONTENTS. TO COVER EARTHQUAKE DAMAGE TO YOUR HOME AND ITS CONTENTS YOU NEED TO PURCHASE A SEPARATE EARTHQUAKE INSURANCE POLICY. THE COVERAGE PROVIDED BY AN EARTHQUAKE INSURANCE POLICY IS DIFFERENT FROM, AND TYPICALLY MORE LIMITED THAN, THE COVERAGE PROVIDED BY YOUR RESIDENTIAL PROPERTY INSURANCE POLICY.

CALIFORNIA LAW REQUIRES INSURANCE COMPANIES TO OFFER EARTHQUAKE INSURANCE IN CONJUNCTION WITH A RESIDENTIAL PROPERTY INSURANCE POLICY. IF YOU DO NOT ACCEPT THE OFFER OF EARTHQUAKE INSURANCE BELOW WITHIN 30 DAYS OF THE MAILING OF THIS NOTICE, YOUR INSURANCE COMPANY SHALL PRESUME THAT YOU HAVE NOT ACCEPTED THIS OFFER OF EARTHQUAKE INSURANCE.

YOU MAY PURCHASE EARTHQUAKE INSURANCE COVERAGE ON THE FOLLOWING TERMS:

| | | |
|---|---|---|
| A. | AMOUNT OF DWELLING/BUILDING COVERAGE LIMIT | $537,322.00 |
| B. | DEDUCTIBLE                    15% of A | $80,598.00 |

THE DEDUCTIBLE REPRESENTS THE AMOUNT OF DAMAGE YOUR COVERED PROPERTY MUST INCUR BEFORE EARTHQUAKE INSURANCE BEGINS. IF YOUR COVERED LOSS IS LESS THAN THE APPLICABLE DEDUCTIBLE, YOU MAY NOT RECEIVE ANY PAYMENT. CONTACT YOUR INSURANCE AGENT OR YOUR INSURANCE COMPANY TO OBTAIN DETAILS REGARDING THIS OFFER OF EARTHQUAKE INSURANCE AND OTHER COVERAGE OPTIONS.

C. CONTENTS COVERAGE LIMIT     $5,000

THE DEDUCTIBLE REPRESENTS THE AMOUNT OF DAMAGE YOUR COVERED PROPERTY MUST INCUR BEFORE EARTHQUAKE INSURANCE BEGINS. IF YOUR COVERED LOSS IS LESS THAN THE APPLICABLE DEDUCTIBLE, YOU MAY NOT RECEIVE ANY PAYMENT. CONTACT YOUR INSURANCE AGENT OR YOUR INSURANCE COMPANY TO OBTAIN DETAILS REGARDING THIS OFFER OF EARTHQUAKE INSURANCE AND OTHER COVERAGE OPTIONS.

D. ADDITIONAL LIVING EXPENSES COVERAGE LIMIT     $1,500

E. ESTIMATED ANNUAL PREMIUM     $1,515.00

HO 98-08 (01-16)
American Security Insurance Company
Standard Guaranty Insurance Cmpany

Page 1 of 2
HO9008.DOC-0915

(Page 5 of 20)

## DEDUCTIBLE EXPLANATION

Your deductible applies as follows:

### Dwelling Owner Policies

The deductible for Dwelling Coverage is calculated by multiplying the amount of coverage in Item A. above by the percentage indicated in Item B. If your loss is less than the calculated deductible, you may not receive any payment from your Earthquake Coverage.

If loss to your dwelling does not meet or exceed the deductible for the Dwelling Coverage in Item A., you will not receive any payment under Contents Coverage in Item C. There is no applicable deductible for Additional Living Expenses/Loss of Use Coverage.

Dwelling Coverage is written at your dwellings 100% replacement cost value at the time of this earthquake coverage offer.

### Contents Only and Tenant or Condominium Policies

Personal Property Coverage under Item C. is offered at $5,000 with a deductible in the amount of $750.

YOU MUST ASK THE COMPANY TO ADD EARTHQUAKE COVERAGE WITHIN 30 DAYS FROM THE DATE OF MAILING OF THIS NOTICE OR IT SHALL BE CONCLUSIVELY PRESUMED THAT YOU HAVE NOT ACCEPTED THIS OFFER.

THIS COVERAGE SHALL BE EFFECTIVE ON THE DAY YOUR ACCEPTANCE OF THIS OFFER IS RECEIVED BY US.

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS FORM.

( )  YES,  I would like a Residential Earthquake Coverage issued.

Make check payable to: Insureco Agency & Insurance Services

To indicate acceptance, please complete this form and return to us with a check for the annual premium amount. Please remember that if you do not ask us to issue earthquake coverage within 30 days from the date postmarked on this notice, it shall be conclusively presumed that you do not wish to have this coverage.

( )  NO,  I do not wish a Residential Earthquake Coverage be issued at this time.

_____                    _____
INSURED'S SIGNATURE                                             DATE

Please return the completed form to:

Insureco Agency & Insurance Services, Inc.
P.O. Box 1000
Orange, California 92856-0010

1-877-893-5739

HO 98-08 (01-16)
American Security Insurance Company
Standard Guaranty Insurance Cmpany

(Page 6 of 20)

HOMEOWNERS
HO 04 07 07 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST
# LOSS SETTLEMENT – CALIFORNIA

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage C; and

   b. If covered in this Policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this Policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (3) Smoking implements; or

      (4) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles, whose age or history contributes to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in A. above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage C, if applicable;

   d. Any applicable special limits of liability stated in this Policy; or

   e. For loss to any item described in A.2.a. through f. above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. We must be notified within:

   a. 36 months after our payment for actual cash value if the loss or damage relates to a state of emergency under California Law; or

   b. 12 months after our payment for actual cash value in all other cases;

   that you intend to repair or replace the damaged property

All other provisions of this Policy apply.

© Insurance Services Office, Inc., 2018

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – CALIFORNIA

**NOTICE**

Throughout the Policy, the term spouse includes an individual registered under California law as a domestic partner with the "named insured" shown in the Declarations.

**SECTION I – PROPERTY COVERAGES**

**COVERAGE A – Dwelling**

In Forms HO 00 02, HO 00 03, HO 00 05 and HO 00 08, the following is added:

If a state of emergency under California Law is declared, you may combine the policy limits for Coverage A and Coverage B, for any of the covered expenses reasonably necessary to rebuild or replace the damaged or destroyed dwelling, if the Coverage A policy limits to rebuild or replace the dwelling are insufficient. This provision does not increase the limit of liability that applies to Coverage B. Claims payments for other structures in excess of the amount applied towards the necessary cost to rebuild or replace the damaged or destroyed dwelling shall be paid according to the terms of the Policy.

**COVERAGE C – Personal Property**

**Special Limits of Liability.**

Items 10. and 11. are deleted and replaced by the following:

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs, or other media;

    for use with any electronic apparatus described in this Item 10.

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a. Accessories and antennas; or

    b. Tapes, wires, records, discs, or other media;

    for use with any electronic apparatus described in this Item 11.

**Property Not Covered.**

Item 3.b. is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

    b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

       (1) Accessories or antennas; or

       (2) Tapes, wires, records, discs, or other media;

       for use with any electronic apparatus described in this Item 3.b. The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

    a. Used to service an "insured's" residence; or

    b. Designed for assisting the handicapped;

**COVERAGE D – Loss of Use**

Item 1. is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

    However, if a state of emergency under California Law is declared, payment will be for a period no less than:

    a. The time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere; or

    b. 24 months from the date of loss;

       whichever is shorter.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

If you, acting in good faith and with reasonable diligence, encounter a delay or delays in approval for, or reconstruction of, the home or residence that are beyond your control, we shall provide an additional extension of 12 months. Circumstances beyond your control include, but are not limited to:

a. Unavoidable construction permit delays;

b. The lack of necessary construction materials; or

c. The unavailability of contractors to perform the necessary work.

We shall provide one or more additional extensions of six months for good cause.

**ADDITIONAL COVERAGES**

8. Collapse is deleted and replaced by the following:

8. **Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this Additional Coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4) Weight of contents, equipment, animals, or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items (2), (3), (4), (5), and (6) unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

c. If Special Personal Property Coverage Endorsement is attached to the policy, Section I – Additional Coverages 8. Collapse in that Endorsement is deleted in its entirety and Paragraph b.(1) above is deleted and replaced by the following:

(1) Perils Insured Against in Coverages A and B.

In addition, the following paragraph is added:

This Additional Coverage does not apply to Coverage C – Personal Property.

d. If Unit-Owners Coverage C Endorsement is attached to the policy Section I – Additional Coverages 8. Collapse in that Endorsement is deleted in its entirety and Paragraph b.(1) above is deleted and replaced by the following:

(1) Perils Insured Against in Coverage A.

In addition, the following paragraph is added:

This Additional Coverage does not apply to Coverage C – Personal Property.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. Glass or Safety Glazing Material is deleted and replaced by the following:

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of Glass or Safety Glazing Material which is part of a covered building, storm door or storm window; and

(2) The breakage, caused directly by Earth Movement, of Glass or Safety Glazing Material which is part of a covered building, storm door or storm window; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments, or splinters of broken Glass or Safety Glazing Material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the Glass or Safety Glazing Material has been broken, except as provided in a.(3) above; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

HO 98 63 04 19
HO98G3.DOD-0519

(Page 9 of 20)

**(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

The following Additional Coverage is added:

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

If a total loss has occurred and:

**(1)** The dwelling or other structure is rebuilt at a new premises; or

**(2)** You purchase an existing dwelling or other structure at a new premises;

we will pay the increased costs, subject to the limit in a. above, you would have incurred due to the enforcement of any ordinance or law had you repaired, rebuilt or replaced the dwelling or other structure at the original premises.

b. You may use all or part of this Ordinance or Law Coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**SECTION I – PERILS INSURED AGAINST**

Coverage A – Dwelling and Coverage B – Other Structures, Item 2.e.(3) is deleted and replaced by the following:

**(3)** Smog, rust or other corrosion, fungus, mold, wet or dry rot;

In Endorsements:

HO 00 15, Special Personal Property Coverage, this is Item 1.b.(4)(c) under Section I – Perils Insured Against.

HO 04 14, Special Computer Coverage, this is Item B.(3)(c) under Perils Insured Against.

HO 17 31, Unit-Owners Coverage C, this is Item 3.d.(3) under Section I – Perils Insured Against.

HO 17 32, Unit-Owners Coverage A, this is Item 2.e.(3) under Perils Insured Against.

**SECTION I – EXCLUSIONS**

**1.** Ordinance or Law is deleted and replaced by the following:

**1.** Ordinance Or Law, meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This Exclusion, 1.a., does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion 1.a.).

**2. Earth Movement** is deleted and replaced by the following:

2. **Earth Movement**, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

a. Fire; or

b. Explosion;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

(This is Exclusion 1.b.).

**4. Power Failure** is deleted and replaced by the following:

4. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion 1.d.).

**SECTION I – CONDITIONS**

3. **Loss Settlement**

Paragraph b.(1) is replaced by the following:

(1) If, at the time of loss, the amount of insurance in this Policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this Policy that applies to the building;

(b) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(c) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (b) above is limited to the cost which would have been incurred, including any increased costs you would have incurred due to the enforcement of any ordinance or law, if the building had been built at the original premises.

Paragraph b.(5) is replaced by the following:

(5) We must be notified that you intend to repair or replace the damaged property within:

(1) 36 months after our payment for actual cash value if the loss or damage relates to a state of emergency under California Law; or

(2) 12 months after our payment for actual cash value in all other cases;

If you, acting in good faith and with reasonable diligence, encounter a delay or delays in approval for, or reconstruction of, the home or residence that are beyond your control, we shall provide one or more additional extensions of six months for good cause. Circumstances beyond your control include, but are not limited to:

(1) Unavoidable construction permit delays;

(2) The lack of necessary construction materials; or

(3) The unavailability of contractors to perform the necessary work.

Item 8. **Suit Against Us**, is deleted and replaced by the following:

8. **Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

Item 10. **Loss Payment**, is deleted and replaced by the following:

10. **Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

a. Reach an agreement with you;

b. There is an entry of a final judgment; or

c. There is a filing of an appraisal award with us.

**SECTION II – EXCLUSIONS**

Under 1. Coverage E – **Personal Liability** and Coverage F – **Medical Payments To Others**, Item a. is deleted and replaced by the following:

a. Which is expected or intended by one or more "insureds";

**SECTIONS I AND II – CONDITIONS**

2. **Concealment or Fraud** is deleted and replaced by the following:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

HO 98 63 04 19
HO9863.DOO-0519

[Page 11 of 20]

**2. Concealment Or Fraud**

a. Under Section I – Property Coverages, with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section I – Property Coverages if, whether before or after a loss, one or more "insureds" have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

b. Under Section II – Liability Coverages, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

**5. Cancellation** is deleted and replaced by the following:

**5. Cancellation**

a. You may cancel this Policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

b. If a state of emergency under California Law is declared and the dwelling or other structure is located in any ZIP Code within or adjacent to the fire perimeter, as determined by California Law, we may not cancel this Policy for one year, beginning from the date the state of emergency is declared, solely because the dwelling or other structure is located in an area in which a wildfire has occurred.

However, we may cancel:

(1) When you have not paid the premium, at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) If willful or grossly negligent acts or omissions by the named insured, or his or her representatives, are discovered that materially increase any of the risks insured against.

(a) When this Policy has been in effect for less than 60 days and is not a renewal with us, we will notify you at least 20 days before the date cancellation takes effect.

(b) When this Policy has been in effect for more than 60 days, we will notify you at least 30 days before the date cancellation takes effect.

(3) If there are physical changes in the property insured against, beyond the catastrophe-damaged condition of the structures and surface landscape, which result in the property becoming uninsurable.

(a) When this Policy has been in effect for less than 60 days and is not a renewal with us, we will notify you at least 20 days before the date cancellation takes effect.

(b) When this Policy has been in effect for more than 60 days, we will notify you at least 30 days before the date cancellation takes effect.

c. In all other cases, we may cancel only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this Policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason, except as provided below, by letting you know at least 20 days before the date cancellation takes effect.

We may not cancel this policy solely because:

(a) You accepted an offer of earthquake coverage;

(b) Corrosive soil conditions exist on the "residence premises". This Provision (b) applies only if this Policy includes one or more of the following, which exclude loss caused by corrosive soil conditions:

(i) Homeowners 3 Special Form;

(ii) Unit-Owners Coverage A Endorsement; or

(iii) Unit-Owners Coverage C Endorsement.

(c) You cancelled or did not renew an earthquake policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we may cancel this Policy if you have accepted a new or renewal policy issued by the CEA that included an earthquake policy premium surcharge, but you failed to pay the earthquake policy premium surcharge authorized by the CEA.

However, in the event of a total loss to the residence premises, we will not cancel while any structure at that location is being rebuilt except for the reasons stated in Paragraphs b.(1), and b.(3) of this Condition 5., Cancellation.

(3) When this Policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been:

(a) Conviction of a crime having as one of its necessary elements an act increasing the hazard insured against; or

(b) Discovery of fraud or material misrepresentation by:

(i) Any "insured" or his or her representative in obtaining this insurance; or

(ii) You or your representative in pursuing a claim under this policy; or

(c) Discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

(d) Physical changes in the property insured against which result in the property becoming uninsurable.

However, we may not cancel this Policy solely because corrosive soil conditions exist on the "residence premises" if this policy includes one or more of the following, which exclude loss caused by corrosive soil conditions:

(i) Homeowners 3 Special Form;

(ii) Unit-Owners Coverage A Endorsement; or

(iii) Unit-Owners Coverage C Endorsement.

(e) Acceptance of a new or renewal policy, issued by the CEA that included an earthquake policy premium surcharge, but you failed to pay the earthquake policy premium surcharge authorized by the CEA.

This can be done by notifying you at least 30 days before the date cancellation takes effect.

(4) When this Policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 45 days before the date cancellation takes effect.

d. If, when we cancel this Policy, the return premium is not refunded with the notice of cancellation, we will refund it within 25 business days after we send the cancellation notice to you. If, when you cancel this policy, the return premium is not refunded when this Policy is returned to us, we will refund it within 25 business days of the date when we receive your notice of cancellation.

6. Nonrenewal is deleted and replaced by the following:

6. Nonrenewal

a. We may elect not to renew this Policy, subject to the provisions of b. below. We may do so by delivering to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this Policy. Proof of mailing will be sufficient proof of notice.

b. We will not refuse to renew this Policy:

(1) Solely because you accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew this Policy after you have accepted an offer of earthquake coverage if one or more of the following reasons apply:

(a) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this Policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

(b) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

(c) We have:

(i) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

HO 98 63 04 19

HO9863.DOC-0519

(ii) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

(2) Solely because you cancelled or did not renew an earthquake policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge;

(3) Solely because corrosive soil conditions exist on the "residence premises". This Provision (3) applies only if this Policy includes one or more of the following, which exclude loss

(a) Homeowners 3 Special Form;

(b) Unit-Owners Coverage A Endorsement; or

(c) Unit-Owners Coverage C Endorsement.

c. If this Policy is written for a period of less than one year, we agree not to refuse to renew except at the end of an annual period commencing with the original or renewal effective date.

d. If a state of emergency under California Law is declared and the dwelling or other structure is located in any ZIP Code within or adjacent to the fire perimeter, as determined by California Law, we may not nonrenew this Policy for one year, beginning from the date the state of emergency is declared, solely because the dwelling or other structure is located in an area in which a wildfire has occurred.

However, we may nonrenew:

(1) If willful or grossly negligent acts or omissions by the named insured, or his or her representatives, are discovered that materially increase any of the risks insured against;

(2) If losses unrelated to the post-disaster loss condition of the property have occurred that would collectively render the risk ineligible for renewal; or

(3) If there are physical changes in the property insured against, beyond the catastrophe-damaged condition of the structures and surface landscape, which result in the property becoming uninsurable.

All other provisions of this Policy apply.

## AMERICAN SECURITY INSURANCE COMPANY
## STANDARD GUARANTY INSURANCE COMPANY
## CALIFORNIA RESIDENTIAL PROPERTY INSURANCE BILL OF RIGHTS

A consumer is entitled to receive information regarding homeowner's insurance. The following is a limited overview of information that your insurance company can provide:

- The insurance company's customer service telephone number for underwriting, rating, and claims inquiries.
- A written explanation for any cancellation or nonrenewal of your policy.
- A copy of the insurance policy.
- An explanation of how your policy limits were established.
- In the event of a claim, an itemized, written scope of loss report prepared by the insurer or its adjuster within a reasonable time period.
- In the event of a claim, a copy of the Unfair Practices Act and, if requested, a copy of the Fair Claims Settlement Practices Regulations.
- In the event of a claim, notification of a consumer's rights with respect to the appraisal process for resolving claims disputes.
- An offer of coverage and premium quote for earthquake coverage, if eligible.

A consumer is also entitled to select a licensed contractor or vendor to repair, replace, or rebuild damaged property covered by the insurance policy.

This insurer reports claim information to one or more claims information databases. The claim information is used to furnish loss history reports to insurers. If you are interested in obtaining a report from a claims information database, you may do so by contacting LexisNexis Consumer Services at 1-800-456-6004.

The information provided herein is not all-inclusive and does not negate or preempt existing California law. If you have any concerns or questions, contact your agent, broker, insurance company, or the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

M6001G0111

M6001G.DOC-1213

(Page 15 of 20)

# AMERICAN SECURITY INSURANCE COMPANY
# STANDARD GUARANTY INSURANCE COMPANY

## NOTICE TO CONSUMERS —
## CALIFORNIA RESIDENTIAL INSURANCE DISCLOSURE

This disclosure is required by Section 10102 of the California Insurance Code. This form provides general information related to residential property insurance and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and the amount payable. The information provided does not preempt existing California law.

### PRIMARY FORMS OF RESIDENTIAL DWELLING COVERAGE

> You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed.
> Guaranteed Replacement Cost is the broadest level of coverage.

____ **ACTUAL CASH VALUE COVERAGE** pays the costs to repair the damaged dwelling minus a deduction for physical depreciation. If the dwelling is completely destroyed, this coverage pays the fair market value of the dwelling at time of loss. In either case, coverage only pays for costs up to the limits specified in your policy.

__X__ **REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling, without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Coverage only pays for replacement costs up to the limits specified in your policy.

__X__ **EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

____ **GUARANTEED REPLACEMENT COST COVERAGE** covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits shown on the policy declarations page.

__X__ **BUILDING CODE UPGRADE COVERAGE**, also called Ordinance and Law coverage, is an important option that covers additional costs to repair or replace a dwelling to comply with the building codes and zoning laws in effect at the time of loss or rebuilding. These costs may otherwise be excluded by your policy. Meeting current building code requirements can add significant costs to rebuilding your home. Refer to your policy or endorsement for the specific coverage provided and coverage limits that apply.

**READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY:** The policy declarations page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses. The actual policy and endorsements provide the details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. The amount of any claim payment made to you will be reduced by any applicable deductibles shown on your policy declarations page. It is important to take the time to consider whether the limits and limitations of your policy meet your needs. Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.

M8056G0111

## INFORMATION YOU SHOULD KNOW ABOUT RESIDENTIAL DWELLING INSURANCE

**AVOID BEING UNDERINSURED:** Insuring your home for less than its replacement cost may result in your having to pay thousands of dollars out of your own pocket to rebuild your home if it is completely destroyed. Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.

**THE RESIDENTIAL DWELLING COVERAGE LIMIT:** The coverage limit on the dwelling structure should be high enough so you can rebuild your home if it is completely destroyed. Please note:

- The cost to rebuild your home is almost always different from the market value.
- Dwelling coverage limits do not cover the value of your land.
- The estimate to rebuild your home should be based on construction costs in your area and should be adjusted to account for the features of your home. These features include but are not limited to the square footage, type of foundation, number of stories, and the quality of the materials used for items such as flooring, countertops, windows, cabinetry, lighting and plumbing.
- The cost to rebuild your home should be adjusted each year to account for inflation.
- Coverage limits for contents, separate structures, additional living expenses and debris removal are usually based on a percentage of the limit for the dwelling. If your dwelling limit is too low, these coverage limits may also be too low.

You are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company or an independent appraisal from a local contractor, architect, or real estate appraiser. If you do obtain an estimate of replacement value, and wish to change your policy limits, contact your insurance company. While not a guarantee, a current estimate can help protect you against being underinsured.

**DEMAND SURGE:** After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor. This effect is known as demand surge. Demand surge can increase the cost of rebuilding your home. Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

**CHANGES TO PROPERTY:** Changes to your property may increase its replacement cost. These changes may include the building of additions, customizing your kitchen or bathrooms, or otherwise remodeling your home. Failure to advise your insurance company of any significant changes to your property may result in your home being underinsured.

**EXCLUSIONS:** Not all causes of damage are covered by common homeowners or residential fire policies. You need to read your policy to see what causes of loss or perils are not covered. Coverage for landslide is typically excluded. Some excluded perils such as earthquake or flood can be purchased as an endorsement to your policy or as a separate policy. Contact your agent, broker, or insurance company if you have a concern about any of the exclusions in your policy.

**CONTENTS (PERSONAL PROPERTY) COVERAGE DISCLOSURE:**
This disclosure form does not explain the types of contents coverage provided by your policy for items such as your furniture or clothing. Contents may be covered on either an actual cash value or replacement cost basis depending on the contract. Almost all policies include specific dollar limitations on certain property that is particularly valuable such as jewelry, art, or silverware. Contact your agent, broker or insurance company if you have any questions about your contents coverage. You should create a list of all personal property in and around your home. Pictures and video recordings also help you document your property. The list, photos, and video should be stored away from your home.

**CONSUMER ASSISTANCE**
If you have any concerns or questions, contact your agent, broker, or insurance company. You are also encouraged to contact the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

_____          _____

Insured Signature                                                               Date

M8056G0111                                                                                  Page 2 of 2
                                                                                                   M8056G.DOC-12/13

POLICY NUMBER:

HOMEOWNERS
HPC0009E-0419

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A – DWELLING – CALIFORNIA

### SCHEDULE

| Additional Amount Of Insurance | 50 % |
| --- | --- |

The Additional Amount Of Insurance is determined by multiplying the Coverage A Limit Of Liability shown in the Declarations by the percentage amount shown above.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

A. If you have:

1. Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

   a. The property evaluations we make; and

   b. Any increases in inflation; and

2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

B. If there is a loss to the building insured under Coverage A that exceeds the Coverage A Limit Of Liability shown in the Declarations, for the purpose of settling that loss only:

1. We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

2. Section I – Condition 3. Loss Settlement Paragraph b. is replaced by Paragraphs b. and c. as follows:

   b. The building insured under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

      (1) The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

      (2) The necessary amount actually spent to repair or replace the damaged building; or

      (3) The limit of liability under this Policy that applies to the building, plus any additional amount provided by this endorsement.

   If the building is rebuilt at a new premises, the cost described in a. above is limited to the cost which would have been incurred, including any increased costs you would have incurred due to the enforcement of any ordinance or law, if the building had been rebuilt at the original premises.

   c. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

   We must be notified that you intend to repair or replace the damaged property within:

      (1) 36 months after our payment for actual cash value if the loss or damage relates to a state of emergency under California Law; or

      (2) 12 months after our payment for actual cash value in all other cases.

HPC0009E-0419

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Page 1 of 2
HPC0009E.DOC-0519

If you, acting in good faith and with reasonable diligence, encounter a delay or delays in approval for, or reconstruction of, the home or residence that are beyond your control, we shall provide one or more additional extensions of six months for good cause. Circumstances beyond your control include, but are not limited to:

(1) Unavoidable construction permit delays;

(2) The lack of necessary construction materials; or

(3) The unavailability of contractors to perform the necessary work.

All other provisions of this Policy apply.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

HPC0009E-0419
HPC0009E.DOC-0519

Page 19 of 20]

**American Security Insurance Company**
**Standard Guaranty Insurance Company**
**Financial Insurance Exchange**
P.O. BOX 1000
ORANGE, CA 92856

**RENEWAL**
**QUESTIONNAIRE**
**HOMEOWNER'S PROGRAMS**
**DWELLING PROGRAM**

DATE: _____

MELISSA SHROPSHIRE
BRYAN SHROPSHIRE
PO BOX 3408
RUNNING SPRINGS CA  92382

CHH 0236418 06

Rebuilding costs are rising significantly each year. Many customers are finding that their previous coverage limits may not be sufficient to completely rebuild their property in the event of a major loss. If you have made any additions to your property, your insurance needs have changed, or you feel that your insurance coverage limits may not be enough in the case of a major loss, you may want to increase your insurance coverage limit. Please complete the following survey so we may update our records regarding your property. This will help us to define any unique insurance needs that you may have as well as help us to determine if you are now eligible for any credits. We will review this information and contact you if we need any additional information.

| 1. | HAVE YOU REFINANCED YOUR HOME IN THE LAST 12 MONTHS | | DATE REFINANCED | |
| --- | --- | --- | --- | --- |
| | ☐ YES     ☐ NO | | | |
| 2. | HAS THE OCCUPANCY OF THE PROPERTY CHANGED | | HOW | |
| | ☐ YES     ☐ NO | | | |
| 3. | HAVE YOU INSTALLED ANY PROTECTIVE DEVICES OR ALARMS | | TYPE | |
| | ☐ YES     ☐ NO | | | |
| 4. | HAVE YOU HAD ANY ROOM ADDITIONS OR MAJOR ALTERATIONS TO YOUR HOME | | | |
| | ☐ YES     ☐ NO | | | |
| | EXPLAIN | | | |

| 5. | HAVE YOU UPDATED ANY OF THE FOLLOWING | | | |
| --- | --- | --- | --- | --- |
| | HEAT | ELECTRICAL | PLUMBING | ROOF |
| | ☐ YES     ☐ NO | ☐ YES     ☐ NO | ☐ YES     ☐ NO | ☐ YES     ☐ NO |
| | IF YES, PLEASE NOTE DATE OF COMPLETION | | | |

| 6. | DO YOU HAVE A POOL | HEIGHT OF FENCE | GATED |
| --- | --- | --- | --- |
| | ☐ YES     ☐ NO | | ☐ YES     ☐ NO |
| 7. | DO YOU HAVE ANY DOGS | HOW MANY | BREED(S) |
| | ☐ YES     ☐ NO | | |

| 8. | DO YOU HAVE ANY PERSONAL PROPERTY THAT YOU NEED TO SCHEDULE | LIST ITEMS (AN APPRAISAL OR SALES RECEIPT IS REQUIRED FOR ANY ITEM VALUED AT $1,000.00 OR MORE) |
| --- | --- | --- |
| | ☐ YES     ☐ NO | |
| 9. | ARE YOU INTERESTED IN ANY INCREASED LIMITS OR OPTIONAL COVERAGES THAT MAY BE AVAILABLE IN ANOTHER PROGRAM | |
| | ☐ YES     ☐ NO | |
| 10. | DO YOU OWN MORE THAN ONE HOME | WHERE |
| | ☐ YES     ☐ NO | |
| 11. | DO YOU OWN A BOAT | ARE YOU INTERESTED IN INSURANCE COVERAGE |
| | ☐ YES     ☐ NO | ☐ YES     ☐ NO |

Please provide your telephone number, including the area code, in the event we need to contact you for additional information: (        )        _____

*Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purposes of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and may subject such person to criminal and substantial civil penalties.*

| SIGNATURE | DATE |
| --- | --- |
| X | /     / |

CHQ 001 02 04

CHQ001.DOC-1204

(Page 20 of 20)

POLICY NUMBER: CHH 0236416  08

IL P 063 01 16

# CALIFORNIA NOTICE OF DESIGNATED ADDITIONAL PERSON TO RECEIVE NOTICE OF CANCELLATION OR NONRENEWAL

## SCHEDULE

| Additional Person to Receive Notice Of Cancellation Or Nonrenewal |
|---|
| Name: |
| Address: |

In accordance with CAL INS. CODE § 396, we are notifying you of your right to designate one additional person to receive notice of lapse, termination, expiration, nonrenewal, or cancellation of your policy for nonpayment of premium.

You may establish or change the designated person by completing the Schedule and mailing or delivering this completed notice to us. No benefit under your policy is provided to the designated person by this Notice, other than the right to receive the aforementioned notice.

## MANDATORY ENDORSEMENT
## CALIFORNIA

**THIS ENDORSEMENT CHANGES YOUR POLICY AND/OR CERTIFICATE. PLEASE READ IT CAREFULLY.**

It is understood and agreed that the following provisions are added:

**Requirements in case loss occurs**

The insured shall give written notice to this company of any loss without unnecessary delay, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within 60 days after the loss, unless the time is extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required and obtainable, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required and subject to the provisions of Section 2071.1, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and

copies thereof to be made. The insurer shall inform the insured that tax returns are privileged against disclosure under applicable state law but may be necessary to process or determine the claim.

The insurer shall notify every claimant that they may obtain, upon request, copies of claim-related documents. For purposes of this section, "claim-related documents" means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs. However, attorney work product and attorney-client privileged documents, and documents that indicate fraud by the insured or that contain medically privileged information, are excluded from the documents an insurer is required to provide pursuant to this section to a claimant. Within 15 calendar days after receiving a request from an insured for claim-related documents, the insurer shall provide the insured with copies of all claim-related documents, except those excluded by this section. Nothing in this section shall be construed to affect existing litigation discovery rights.

**Appraisal**

In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. Appraisal proceedings are informal unless the insured and this company

mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings.

The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally. In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this company but shall not be compelled.

**Adjusters**

If, within a six-month period, the company assigns a third or subsequent adjuster to be primarily responsible for a claim, the insurer, in a timely manner, shall provide the insured with a written status report. For purposes of this section, a written status report shall include a summary of any decisions or actions that are substantially related to the disposition of a claim, including, but not limited to, the amount of losses to structures or contents, the retention or consultation of design or construction professionals, the amount of coverage for losses to structures or contents and all items of dispute.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY AND/OR CERTIFICATE REMAIN UNCHANGED.**

HO 00 03 04 91

# HOMEOWNERS 3
# SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **3.a.** or **3.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in **3.a.** or **3.b.** above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in **4.a.** and **4.b.** above.

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

HO 00 03 04 91

Copyright, Insurance Services Office, Inc., 1990

Page 1 of 18

HO 00 03 04 91

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B – Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C – Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises." is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1,000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1,000 on trailers not used with watercraft.

5. $1,000 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

6. $2,000 for loss by theft of firearms.

7. $2,500 for loss by theft of silverware, silverplated ware, goldware, goldplated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2,500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits **10.** and **11.** below.

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

   Copyright, Insurance Services Office, Inc., 1990   HO 00 03 04 91

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

  a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

  b. Is away from the "residence premises"; and

  c. Is used at any time or in any manner for any "business" purpose.

  Electronic apparatus includes:

  a. Accessories and antennas; or

  b. Tapes, wires, records, discs or other media;

  for use with any electronic apparatus.

**Property Not Covered. We do not cover:**

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

  a. Their equipment and accessories; or

  b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

    (1) Accessories or antennas; or

    (2) Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

    The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

  We do cover vehicles or conveyances not subject to motor vehicle registration which are:

  a. Used to service an "insured's" residence; or

  b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages **10.**;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

  a. Books of account, drawings or other paper records; or

  b.

    data processing tapes, wires, records, discs or other software media;

  However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages **6.**

**COVERAGE D Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph **b.** below.

  a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

  b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

  Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

    **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

  Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** and **2.** above for no more than two weeks.

HO 00 03 04 91

The periods of time under **1., 2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITION **2.d.**

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

      Copyright, Insurance Services Office, Inc., 1990      HO 00 03 04 91

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A – DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in COVERAGE C – PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b., c., d., e.,** and **f.** unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

 Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

10. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

   a. **Fire or lightning.**

   b. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   c. **Explosion.**

   d. **Riot or civil commotion.**

   e. **Aircraft,** including selfpropelled missiles and spacecraft.

   f. **Vehicles.**

   g. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

   h. **Vandalism or malicious mischief.**

   i. **Falling objects.**

   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

   j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

   k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   This peril does not include loss:

   (1) To the system or appliance from which the water or steam escaped;

   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

   In this peril, a plumbing system does not include a sump, sump pump or related equipment.

   l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

   m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

   This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain the system and appliances of water.

   n. **Sudden and accidental damage from artificially generated electrical current.**

   This peril does not include loss to a tube, transistor or similar electronic component.

   o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

   The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

---

## SECTION I PERILS INSURED AGAINST

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead; or

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**COVERAGE C – PERSONAL PROPERTY**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including selfpropelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by an "insured";

   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

c. From that part of a "residence premises" rented by an "insured" other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I – EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   (1) Fire;

   (2) Explosion; or

   (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

   ensues and then we will pay only for the ensuing loss.

   This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

   (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   (2) Water which backs up through sewers or drains or which overflows from a sump; or

---

Copyright, Insurance Services Office, Inc.. 1990         HO 00 03 04 91

HO 00 03 04 91

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**d. Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

**e. Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**f. War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**g. Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I – CONDITIONS.

**h. Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**a. Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

**b. Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

**c. Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

---

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

---

HO 00 03 04 91          Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in **2.e.** above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2,500;

we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

HO 00 03 04 91

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or non-renewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

HO 00 03 04 91             Copyright, Insurance Services Office, Inc., 1990                    Page 11 of 18

HO 00 03 04 91

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II – LIABILITY COVERAGES

### COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II – EXCLUSIONS

1. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

HO 00 03 04 91

(3) That are stored;

h. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage E – Personal Liability**, does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of an "insured location"; or

(b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

by the "insured" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

(1) Is also an insured under a nuclear energy liability policy; or

(2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada; or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F – Medical Payments to Others**, does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

(1) Occurs off the "insured location"; and

(2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

Copyright, Insurance Services Office, Inc., 1990     HO 00 03 04 91

HO 00 03 04 91

b. To any person eligible to receive benefits:
   (1) Voluntarily provided; or
   (2) Required to be provided;
   under any:
   (1) Workers' compensation law;
   (2) Non-occupational disability law; or
   (3) Occupational disease law;
c. From any:
   (1) Nuclear reaction;

(2) Nuclear radiation; or
(3) Radioactive contamination;
all whether controlled or uncontrolled or however caused; or
(4) Any consequence of any of these; or
d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:
   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;
   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;
   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and
   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":
   a. To the extent of any amount recoverable under Section I of this policy;
   b. Caused intentionally by an "insured" who is 13 years of age or older;
   c. To property owned by an "insured";
   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:
      (1) A "business" engaged in by an "insured";
      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or
      (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.
         This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:
   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or
   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
      (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and
      (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

HO 00 03 04 91          Copyright, Insurance Services Office, Inc., 1990          **Page 15 of 18**

HO 00 03 04 91

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section I – Coverage E – Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II – CONDITIONS.

---

## SECTION II – CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

   (1) The identity of the policy and "insured";

   (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

   (3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

   c. At our request, help us:

   (1) To make settlement;

   (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   (3) With the conduct of suits and attend hearings and trials; and

   (4) To secure and give evidence and obtain the attendance of witnesses;

   d. Under the coverage Damage to Property of Others submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person – Coverage F – Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

---

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

HO 00 03 04 91

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance – Coverage E – Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

       (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

       (b) If the risk has changed substantially since the policy was issued.

       This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

HO 04 16 04 91

# PREMISES ALARM OR
# FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

Copyright, Insurance Services Office, Inc., 1990

**HO 04 16 04 91**

HO 04 96 04 91

## NO SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## LIMITED SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II – Liability Coverages because a "business" of an "insured" is excluded under exclusion **1.b.** of Section II – Exclusions;

2. Does not provide Section I – Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C – Special Limits of Liability – item **8.** imposes that limit on "business" property on the "residence premises." (Item **8.** corresponds to item **5.** in Form **HO 00 08.**);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C – Special Limits of Liability – item **9.** imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9.**, **10.** and **11.** correspond to items **6.**, **7.** and **8.** respectively in Form **HO 00 08.**)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

HO 04 96 04 91          Copyright, Insurance Services Office, Inc., 1990

HOMEOWNERS
HO 24 90 01 93

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WORKERS COMPENSATION
# RESIDENCE EMPLOYEES – CALIFORNIA

We agree, with respect to "residence employees":

**Under Coverage I**

To pay when due all benefits required of an "insured" by the California Workers' Compensation Law; and

**Under Coverage II**

To pay on behalf of an "insured" all damages for which the "insured" is legally liable because of "bodily injury" sustained by a "residence employee". The "bodily injury" must be caused by accident or disease and arise out of and in the course of employment by the "insured" while:

a. In the United States of America, its territories or possessions, or Canada, or

b. Temporarily elsewhere if the "residence employee" is a citizen or resident of the United States or Canada.

Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

**Who is Covered**

A "residence employee" is covered if during the 90 calendar days immediately before the date of injury the employee has:

a. Actually been engaged in such employment by the "insured" for no less than 52 hours, or

b. Earned no less than one hundred dollars ($100) in wages.

**Application of Coverage**

This insurance applies only to "bodily injury" which occurs during the policy period. If the "bodily injury" is a disease, it must be caused or aggravated by the conditions of the "residence employee's" employment by the "insured".

**Policy Provisions**

This insurance is subject to all the provisions of this endorsement and the following provisions of this policy:

a. Under **Sections I and II – Conditions:**

    4. Waiver or Change of Policy Provisions.

    5. Cancellation.

    7. Assignment.

    8. Subrogation.

b. Under **Section II – Conditions:**

    3. Duties After Loss.

    6. Suit Against Us.

c. Our agreement to defend the "insured" as provided under **Coverage E – Personal Liability.**

d. Under **Section II – Additional Coverages:**

    1. Claim Expenses.

    2. First Aid Expenses.

e. The definition of "bodily injury", "business", "insured" and "residence employee".

**Additional Provisions Applicable to Coverage I**

The following provisions are applicable to Coverage I:

a. We shall be directly and primarily liable to any "residence employee" of an "insured" entitled to the benefits of the California Workers' Compensation Law.

b. As between the "residence employee" and us, notice to or knowledge of the "occurrence" of the injury on the part of an "insured" will be deemed notice or knowledge on our part.

c. The jurisdiction of an "insured" will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

d. We will be subject to the orders, findings, decisions or awards rendered against an "insured", under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy. This policy shall govern as between an "insured" and us as to payments by either in discharge or an "insured's" liability for compensation.

Copyright, Insurance Services Office, Inc., 1993       **Page 1 of 2**

e. The "residence employee" has a first lien upon any amount which we owe you on account of this insurance. In case of your legal incapacity or inability to receive the money and pay it to the "residence employee", we will pay it directly to the "residence employee". Your obligation to the "residence employee" will be discharged to the extent of such payment.

**Limits of Liability Coverage II**

Our total limit of liability will not exceed $100,000 for all damages because of "bodily injury":

a. Sustained by one or more "residence employees" in any one accident; or

b. Caused by disease and sustained by a "residence employee".

Our total limit of liability will not exceed $500,000 for all damages arising out of "bodily injury" by disease regardless of the number of "residence employees" who sustain "bodily injury" by disease.

**Other Insurance**

This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

**Conformity to Statute**

Terms of this insurance which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

**Exclusions**

This policy does not apply:

a. To liability for additional compensation imposed on an "insured" under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of the serious and willful misconduct of an "insured", or because of "bodily injury" to an employee under 16 years of age and illegally employed at the time of injury;

b. To liability for "bodily injury" arising out of "business" pursuits of an "insured".

c. Under Coverage II:

   1. To liability assumed by the "insured" under any contract or agreement.

   2. To "bodily injury" by disease unless a written claim is made or suit brought against the "insured" within 36 months after the end of the policy period.

   3. To any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

Copyright, Insurance Services Office, Inc., 1993

HO 24 90 01 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ANIMAL LIABILITY SPECIAL LIMIT

**SECTION II – LIABILITY COVERAGES**

In consideration of the premium charged, **SECTION II – LIABILITY COVERAGES,  COVERAGE E – Personal Liability,** item 1. is deleted and replaced by the following:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured".

   $50,000 is the most we will pay for claims arising out of domestic pets or domestic animals you own or in your care, custody or control; and

All other provisions of this policy apply.

**HO 98-04a (Rev. 03-2000)**                                                                                      **Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INFLATION GUARD

For the premium charged, the limits of liability for Coverages A, B, C and D will be increased annually by 3%, applied pro rata during the policy period.

HO 98 13a (Rev. 03-2000)                                                      Page 1 of 1

**HOMEOWNERS**
**HO 98 30 04 00**

**THIS CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ACTUAL CASH VALUE DEFINITION

The following is added to DEFINITIONS:

9. **"actual cash value"** means the amount it would currently cost to repair or replace covered property with new material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

All other provisions of this policy apply.

HO 98 30 04 00

Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

### SCHEDULE*

| | These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | | |
|---|---|---|---|
| 1. | Section I – Property Coverage Limit of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | $ | 10,000 |
| 2. | Section II – Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | $ | 50,000 |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | | | |

**DEFINITIONS USED THROUGHOUT THIS POLICY**

The following definition is added:

9. **"Fungi"**

   a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

   b. Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I - PROPERTY COVERAGES**

**ADDITIONAL COVERAGES**

The following Additional Coverage is added:

11. **"Fungi", Wet Or Dry Rot, Or Bacteria**

   a. The amount shown in the Schedule above is the most we will pay for:

      (1) The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

      (2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

      (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

      (4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

   b. The coverage described in **11a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

   c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

      (1) Number of locations insured under this endorsement; or

      (2) Number of claims made.

   d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

   This coverage does not increase the limit of liability applying to the damaged covered property.

**Section I – PERILS INSURED AGAINST**

**Coverage A – Dwelling and Coverage B – Other Structures**

Paragraph **2.e.(3)** is deleted and replaced by the following:

   (3) Smog, rust or other corrosion;

Paragraph **2.e.(9)** is added:

   (9) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the

Includes copyrighted material of
Insurance Services Office with its permission

presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insured persons" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

## SECTION I – EXCLUSIONS

Exclusion **1.i.** is added.

**i.** **"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This Exclusion does not apply:

(1) When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

(2) To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION II – CONDITIONS

Condition **1.** Limits Of Liability is deleted and replaced by the following:

**1.** **Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in

whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section **II** Coverage **E** Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**a.** Number of locations insured under the policy to which this endorsement is attached;

**b.** Number of persons injured;

**c.** Number of persons whose property is damaged;

**d.** Number of "insureds"; or

**e.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12-months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in **1.** Limit Of Liability of this endorsement, Condition **2.** Severability Of Insurance is deleted and replaced by the following:

**2.** **Severability Of Insurance**

This insurance applies separately to each "Insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** Conditions **1.** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

## SECTIONS I AND II CONDITIONS

Condition **1.** Policy Period is deleted and replaced with the following:

**1.** **Policy Period**

This policy applies only to loss or costs in Section I or bodily injury or property damage in Section II, which occurs during the policy period.

All other provisions of the policy apply.

**Includes copyrighted material of**
**Insurance Services Office with its permission**

# COMMUNITY SERVICE STATEMENT

# _____ Policyholder Number (for New Business Only)

This information is requested by the State of California in order to monitor the insurer's compliance with the law.  All new policyholders are requested to voluntarily provide the following information.

***No such information shall be used for purposes of underwriting or rating any policyholder.***

Policyholder's Name and Address (to be provided in order to refer back to the policy)
Note: use additional forms if needed.

_____
_____
_____

## Policy Type

Fire Personal                           _____          Fire Commercial                     _____
Homeowners                              _____          Commercial Multi-Peril              _____
Private Passenger Auto-Liability        _____

- If policyholder does not wish to provide the Department of Insurance with this information, please check here. ___

Check the Race or National Origin as it applies to the policyholder(s).  For the purpose of completing this form, the policyholder is defined as an individual, spouse, domestic partner, or business partner(s) named on the policy.

|  | POLICYHOLDER | | | CO-POLICYHOLDER | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | Male | Female | Business | Male | Female | Business |
| African-American | ____ | ____ | ____ | ____ | ____ | ____ |
| American Indian or Alaskan Native | ____ | ____ | ____ | ____ | ____ | ____ |
| Asian/Pacific Islander | ____ | ____ | ____ | ____ | ____ | ____ |
| Latino | ____ | ____ | ____ | ____ | ____ | ____ |
| White | ____ | ____ | ____ | ____ | ____ | ____ |
| Other | ____ | ____ | ____ | ____ | ____ | ____ |

N2252-0803

**AMERICAN SECURITY INSURANCE COMPANY**
**STANDARD GUARANTY INSURANCE COMPANY**
Administrative Office: 11222 Quail Roost Drive, Miami, FL 33157

### California Consumer Notice
### Renewal Policy

If you have any inquiries or complaints concerning your policy renewal, please contact our Customer Service Department at 1 (877) 893-5739.

N8083-0204

**Officer Signature Page**

In witness thereof, we have caused this policy to be signed by our President and Secretary and countersigned by our duly authorized representative if required.

SECRETARY

PRESIDENT

### NOTICE OF INSURANCE INFORMATION PRACTICES
### CONSUMER RIGHTS

**Is personal information collected from persons other than individuals proposed for coverage?**
* We get most of our information directly from you.
* In most cases, the application you complete gives us all the information we need to evaluate you or your property for insurance.
* In some insurance transactions, we may not be able to get all of the information we need directly from you. In that case, we may obtain information from outside sources at our own expense.

## Types of information we may collect and how we gather it:

* From you (or provided to us on your behalf) on applications and other forms you submit to us; for example: your name, address, social security number, telephone number, employer, and income.
* For your transactions with our companies or other nonaffiliated parties; for example: your name, address, telephone number, age, credit card use, insurance coverage, transaction history, claims history, and premiums.
* From consumer reporting agencies, public records and data collection agencies; for example: your obligations with others and your creditworthiness.
* From health care providers, such as doctors and hospitals; for example: your past or present health condition. Health data will be collected only if we need to find out if you are eligible for coverage, to process claims, or prevent fraud, as authorized by you or as the law may permit or require. NOTE: We collect health data only to manage a health-related product or service; for example: life or disability insurance for which you applied.
* From you when you enroll, request a service, or file a claim on one of our websites; for example: your name, address, contract number, credit card issuer and account number, personal identification number, email address, service contract and claim information.
* In some cases, from your visits to our Internet websites; for example: session number and user ID. By reviewing the legal notice, terms of use, site agreement or similar named link appearing on any of our websites that you visit, you may learn of any "cookies" utilized by us and of any additional information that may be collected from you on that site.

### Access to recorded personal information
Upon your written request and submission of proper identification:
* Within 30 business days of the receipt of your request to access to your recorded personal information, Assurant will inform you of the nature and substance of the recorded personal information.
* You have the right to see and copy personal information in person or obtain a copy by mail. The information must be reasonably described by you and reasonably locatable and retrievable by us. Any information we provide you will be in plain language.
* If recorded, we will disclose the identity of those persons or institutional sources who gave us information within two (2) years prior to your request. If not recorded, we will disclose the names of those to whom such information is normally disclosed.
* You may request correction, amendment, or deletion of recorded personal information by submitting written request to Assurant, 11222 Quail Roost Drive, Miami, FL 33157.
* Assurant shall provide medical record information supplied by a medical care institution or medical professional, along with the identity of the medical professional or medical institution which provided the information, either directly to you or to a medical professional designated by you, which is licensed to provide medical care with respect to the condition to which the information relates. Assurant will notify you if it elects to disclose the information to a medical professional designated by you. For CA and MA residents mental health record information shall be supplied directly to the individual only with the approval of the qualified professional person with treatment responsibility for the condition to which the information relates.
* We may charge a reasonable fee to cover the costs incurred in providing you a copy of recorded information;

### Request to correct, amend, or delete recorded personal information
Within 30 business days from the date of receipt of your written request to correct, amend, or delete any recorded personal information, we must:
1. Correct, amend or delete the portion of the recorded personal information in dispute; or
2. Notify you of our refusal to make the correction, amendment or deletion, and the reason(s) for the refusal, and your right to file a statement if you disagree.

If we refuse to make a correction, amendment or deletion:
1. You have the right to file a concise statement with us. Your statement: (a) must set forth what you believe to be the correct, relevant, or fair information, and (b) explain why you disagree with our refusal.
2. We will file your statement with any disputed personal information and make it accessible so that anyone reviewing the information will be cognizant of your statement.
3. Furthermore, your statement will be with any subsequent disclosure.

If the information is corrected, the correction will be in writing and provided to you, any person who may have received the incorrect information within the preceding two years, any insurance-support organization that received the information within the preceding

### NOTICE OF INSURANCE INFORMATION PRACTICES
### CONSUMER RIGHTS

seven years, and any insurance support organization that furnished the personal information that has been corrected, amended or deleted.

**Disclosure of personal or privileged information**

We will not disclose any personal or privileged information about you in connection with this insurance transaction without your written authorization unless we provide you with a form or statement that:

1. is written in plain language;
2. is dated;
3. specifies the types of persons authorized to disclose information about you;
4. specifies the nature of the information authorized to be disclosed;
5. names the insurance company or agent to whom you are authorizing the information to be disclosed;
6. specifies the purpose(s) for which the information is collected;
7. specifies the length of time your authorization remains valid [ not to exceed thirty (30) months (24 months in MT; 24 months in VA if the application or request involves property and casualty insurance) from the date of authorization]; and
8. states that you or any person authorized to act on your behalf is entitled to receive a copy of any authorization form or statement.

**We will not disclose any personal or privileged information in connection with this insurance transaction, unless the disclosure is reasonably necessary and meets one of the following descriptions:**

1. To enable an insurance company to perform a business, professional or insurance related function and such insurance company agrees not to disclose the information further without your written authorization unless the further disclosure (a) would be otherwise permitted by the Insurance Information and Privacy Protection Act; or (b) would be necessary for the insurance company to perform its function.
2. To enable the insurance company to (a) determine your eligibility for an insurance benefit or payment; or (b) detect or prevent criminal activity, fraud, material misrepresentation, or material nondisclosure in connection with an insurance transaction.
3. To an insurance institution, agent, insurance-support organization, or self-insurer, provided the information disclosed is reasonably necessary and limited to (a) detect or prevent criminal activity, fraud, material misrepresentation, or material nondisclosure in connection with insurance transactions; or (b) for either the disclosing or receiving insurance institution, agent or insurance-support organization to perform its function in connection with an insurance transaction involving you.
4. To enable a medical-care institution or medical professional for the purpose of (a) verifying insurance coverage or benefits; (b) informing an individual of a medical problem of which the individual may not be aware; or (c) conducting an operations or services audit provided that the information is disclosed as is reasonably necessary.
5. To an insurance regulatory authority.
6. To a law enforcement or other governmental authority (a) to protect the interests of the insurance institution, agent or insurance-support organization in preventing or prosecuting the perpetration of fraud; or (b) if the insurance institution, agent or insurance-support organization reasonably believes that illegal activities have been conducted by the individual.
7. To an actuarial or research study, provided that (a) no individual may be identified in any actuarial or research report; (b) materials allowing the individual to be identified are returned or destroyed as soon as they are no longer needed; and (c) the actuarial or research organization agrees not to disclose the information unless the disclosure would be permitted by the Insurance Information and Privacy Protection Act if made by an insurance institution, agent, or insurance-support organization.
8. To a person whose only use of such information will be in connection with the marketing of a product or service, provided that (a) no medical-record information, privileged information, or personal information relating to an individual's character, personal habits, mode of living, or general reputation is disclosed, and no classification derived from such information is disclosed; (b) you have been given an opportunity to indicate that you do not want personal information disclosed for marketing purposes and have given no indication that you do not want the information disclosed; and (c) the person receiving such information agrees not to use it except in connection with the marketing of a product or service.
9. To an affiliate whose only use of the information will be in connection with an audit of the insurance institution or agent or the marketing of an insurance product or service, provided the affiliate agrees not to disclose the information for any other purpose or to unaffiliated persons.
10. To a group policyholder for the purpose of reporting claims experience or conducting an audit of the insurance institution's or agent's operations or services, provided the information disclosed is reasonably necessary for the group policyholder to conduct the review or audit.
11. To a professional peer review organization for the purpose of reviewing the service or conduct of a medical-care institution or medical professional.
12. To a certificate holder or policyholder for the purpose of providing information regarding the status of an insurance transaction.
13. To a lien holder, mortgagee, assignee, lessor, or other person shown on the records of an insurance institution or agent as having legal or beneficial interest in a policy of insurance. Medical-record information will not be disclosed unless the disclosure would otherwise be permitted by the Information and Privacy Protection Act. The information disclosed will also be limited to only reasonably necessary information to permit you to protect your interest in the policy. (Not applicable to Kansas, Montana, and Oregon residents).
14. To authorized personnel of the Division of Motor Vehicle; and to the Department of Environment, Health, and Natural Resources and the information disclosed is immunization information described in G.S. 130A-154. (Applicable to North Carolina residents only).

HOMEOWNERS
HO 07 49 01 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED ADDITIONAL PERSON TO RECEIVE NOTICE OF CANCELLATION OR NONRENEWAL – CALIFORNIA

The following provision is added to **Sections I And II – Conditions:**

**Notice Of Cancellation Or Nonrenewal To Additional Designated Person**

1. If you have designated a person to receive notice of lapse, termination, expiration, nonrenewal, or cancellation of your policy for nonpayment of premium, we will mail or deliver to the designated person advance written notice at least 10 days before the effective date of such lapse, termination, expiration, nonrenewal, or cancellation of your policy for nonpayment of premium.

2. No benefit under this Policy is provided to such designated person, other than the right to receive the aforementioned notice.

# CONSUMER NOTICE

IF YOU HAVE A QUESTION, PROBLEM OR COMPLAINT ABOUT YOUR INSURANCE, PLEASE CONTACT US AT:

**AMERICAN SECURITY INSURANCE COMPANY**
**260 INTERSTATE N. CIRCLE, SE, ATLANTA, GA 30339-2111**
**TELEPHONE:  1-800-852-2244**

IF WE DO NOT RESOLVE YOUR QUESTION, PROBLEM OR COMPLAINT TO YOUR SATISFACTION, YOU MAY THEN CONTACT THE:

**CALIFORNIA INSURANCE DEPARTMENT**
**CONSUMER SERVICES BUREAU**
**300 SOUTH SPRING STREET**
**11TH FLOOR, SOUTH TOWER**
**LOS ANGELES, CA  90013**
**TELEPHONE: 1-800-927-4357**
**WEB: WWW.INSURANCE.CA.GOV**

N9887-0816



**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN BERNARDINO**
San Bernardino District
247 West 3rd St
San Bernardino CA 92415
www.sb-court.org
909-708-8678

| Shropshire et al -v- American Security Insurance Company et al | |
|---|---|
| **NOTICE OF TRIAL SETTING CONFERENCE and NOTICE OF CASE ASSIGNMENT** | Case Number |
| | CIVSB2102687 |

Shaver Legal APC
4473 Main Street
Riverside CA 92501

This case has been assigned to: Bryan Foster in Department S22 - SBJC for all purposes.

Notice is hereby given that the above-entitled case has been set for Trial Setting Conference on:

Hearing Date: 07/15/2021 at 9:00 AM in Department S22 - SBJC

Date: 2/25/2021

Nancy CS Eberhardt, Court Executive Officer

By: _____
Gloria Portillo, Deputy Clerk

.....................................................................................................
.....................................................................................................

CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San Bernardino at the above-listed address. I am not a party to this action and on the date and place shown below, I served a copy of the above-listed notice by:

☒ Enclosed in a sealed envelope mailed to the interested party addressed above for collection and mailing this date, following standard Court practices.

☐ Enclosed in a sealed envelope, first class postage prepaid in the U.S. mail at the location shown above, mailed to the interested party and addressed as shown above or as shown on the attached listing.

☐ A copy of this notice was given to the filing party at the counter.

☐ A copy of this notice was placed in the bin located at this office and identified as the location for the above law firm's collection of file-stamped documents.

Date of Mailing: 2/25/2021

I declare under penalty of perjury that the forgoing is true and correct. Executed on 2/25/2021 at San Bernardino, CA.

By: _____
Gloria Portillo, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

Melissa Shropshire; Bryan Shropshire

Case No.: CIV SB 2 1 0 2 6 8 7

vs.

**CERTIFICATE OF ASSIGNMENT**

American Security Insurance Company, et al.

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the
__Central__ District of the Superior Court under Rule131 and General Order
of this court for the checked reason:

■ **General**          ☐ **Collection**
   **Nature of Action**    **Ground**

| | | |
|---|---|---|
| ☐ | 1. Adoption | Petitioner resides within the district |
| ☐ | 2. Conservator | Petitioner or conservatee resides within the district. |
| ☐ | 3. Contract | Performance in the district is expressly provided for. |
| ☐ | 4. Equity | The cause of action arose within the district. |
| ☐ | 5. Eminent Domain | The property is located within the district. |
| ☐ | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 9. Mandate | The defendant functions wholly within the district. |
| ☐ | 10. Name Change | The petitioner resides within the district. |
| ☐ | 11. Personal Injury | The injury occurred within the district. |
| ☐ | 12. Personal Property | The property is located within the district. |
| ☐ | 13. Probate | Decedent resided or resides within or had property within the district. |
| ☐ | 14. Prohibition | The defendant functions wholly within the district. |
| ☐ | 15. Review | The defendant functions wholly within the district. |
| ☐ | 16. Title to Real Property | The property is located within the district. |
| ☐ | 17. Transferred Action | The lower court is located within the district. |
| ☐ | 18. Unlawful Detainer | The property is located within the district. |
| ☐ | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☒ | 20. Other _Ins. Coverage_ | Real property is located within the district |
| | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designed district is:

Real property located in the District                              3437 Seymour Road
NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR          ADDRESS

Running Springs                          CA                    92382
CITY                                     STATE                 ZIP CODE

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on January 14, 2021      at Riverside _____,
California.

_____
Signature of Attorney/Party

Form # 13-18503-360          CERTIFICATE OF ASSIGNMENT          Rev. June 2019
Mandatory Use

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Cody J. Shaver, Esq. SBN 319362
SHAVER LEGAL, APC
4473 Main Street, Riverside, CA 92501

TELEPHONE NO. (800) 672-4159     FAX NO. *(Optional)* (951) 848-9489
ATTORNEY FOR *(Name)* Melissa Shropshire, Bryan Shropshire

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS 247 W. Third Street
MAILING ADDRESS 247 W. Third Street
CITY AND ZIP CODE San Bernardino, CA 92415
BRANCH NAME Hall of Justice

FOR COURT USE ONLY

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JAN 15 2021

*[signature]*
GLORIA M. PORTILLO DEPUTY
BY

CASE NAME:
Shropshire v. American Security Insurance Company, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CIV SB 2102687  JUDGE  DEPT |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[x] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*: 4: Breach of contract; breach of implied covenant; negligent misrep.; and negligent interfere.
5. This case [ ] is   [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 14, 2021
Cody J. Shaver, Esq.
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

BY FAX

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                   CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                   **CIVIL CASE COVER SHEET**                   Page 2 of 2

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

Melissa Shropshire; Bryan Shropshire

vs.

American Security Insurance Company, et al.

Case No.: ___ CIV SB 2102687

### CERTIFICATE OF ASSIGNMENT

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the Central ___ District of the Superior Court under Rule131 and General Order of this court for the checked reason:

■ **General**                    ☐ **Collection**

| | **Nature of Action** | **Ground** |
|---|---|---|
| ☐ | 1. Adoption | Petitioner resides within the district |
| ☐ | 2. Conservator | Petitioner or conservatee resides within the district. |
| ☐ | 3. Contract | Performance in the district is expressly provided for. |
| ☐ | 4. Equity | The cause of action arose within the district. |
| ☐ | 5. Eminent Domain | The property is located within the district. |
| ☐ | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 9. Mandate | The defendant functions wholly within the district. |
| ☐ | 10. Name Change | The petitioner resides within the district. |
| ☐ | 11. Personal Injury | The injury occurred within the district. |
| ☐ | 12. Personal Property | The property is located within the district. |
| ☐ | 13. Probate | Decedent resided or resides within or had property within the district. |
| ☐ | 14. Prohibition | The defendant functions wholly within the district. |
| ☐ | 15. Review | The defendant functions wholly within the district. |
| ☐ | 16. Title to Real Property | The property is located within the district. |
| ☐ | 17. Transferred Action | The lower court is located within the district. |
| ☐ | 18. Unlawful Detainer | The property is located within the district. |
| ☐ | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☒ | 20. Other Ins. Coverage | Real property is located within the district |
| ☐ | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designed district is:

Real property located in the District
NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR          3437 Seymour Road
                                                          ADDRESS

Running Springs                    CA                     92382
CITY                               STATE                  ZIP CODE

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on January 14, 2021 ___ at Riverside ___ California.

_____
Signature of Attorney/Party

Form # 13-18503-360                    CERTIFICATE OF ASSIGNMENT          Rev. June 2019
Mandatory Use



**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN BERNARDINO**
San Bernardino District
247 West 3rd St
San Bernardino CA  92415
www.sb-court.org
909-708-8678

| Shropshire et al -v- American Security Insurance Company et al | |
|---|---|
| **NOTICE OF TRIAL SETTING CONFERENCE and NOTICE OF CASE ASSIGNMENT** | Case Number<br>CIVSB2102687 |

Shaver Legal APC
4473 Main Street
Riverside CA  92501

This case has been assigned to:  Bryan Foster in Department S22 - SBJC for all purposes.

Notice is hereby given that the above-entitled case has been set for Trial Setting Conference on:

Hearing Date:  07/15/2021  at 9:00 AM in Department S22 - SBJC

Date:  2/25/2021

Nancy CS Eberhardt, Court Executive Officer

By: _____
Gloria Portillo, Deputy Clerk

-------------------------------------------------------------------

### CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San Bernardino at the above-listed address.  I am not a party to this action and on the date and place shown below, I served a copy of the above-listed notice by:

☒ Enclosed in a sealed envelope mailed to the interested party addressed above for collection and mailing this date, following standard Court practices.

☐ Enclosed in a sealed envelope, first class postage prepaid in the U.S. mail at the location shown above, mailed to the interested party and addressed as shown above or as shown on the attached listing.

☐ A copy of this notice was given to the filing party at the counter.

☐ A copy of this notice was placed in the bin located at this office and identified as the location for the above law firm's collection of file-stamped documents.

Date of Mailing:  2/25/2021

I declare under penalty of perjury that the forgoing is true and correct.  Executed on 2/25/2021 at San Bernardino, CA.

By: _____
Gloria Portillo, Deputy Clerk

1  Raymond J. Tittmann No. 191298
   Edward J. Valdespino No. 272754
2  Christina M. Roberto No. 317139
3  **TITTMANN WEIX LLP**
   350 S. Grand Ave., Suite 1630
4  Los Angeles, California 90071
   Phone: 213.797.0630
5  rtittmann@tittmannweix.com
   evaldespino@tittmannweix.com
6  croberto@tittmannweix.com

7
   Attorneys for Defendants
8  AMERICAN SECURITY INSURANCE COMPANY
   and JOSHUA ANDREWS
9

10
11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12              **FOR THE COUNTY OF SAN BERNARDINO**

13

| | |
|---|---|
| 14  MELISSA SHROPSHIRE, an individual, and BRYAN SHROPSHIRE, an individual | Case No.: CIV SB 2102687 |
| 15                        Plaintiffs, | **DEFENDANTS AMERICAN SECURITY INSURANCE COMPANY AND JOSHUA ANDREWS' ANSWER TO PLAINTIFFS' ORIGINAL COMPLAINT** |
| 16           vs. | |
| 17  AMERICAN SECURITY INSURANCE COMPANY, a Delaware Corporation; RIMKUS CONSULTING GROUP, INC. a Texas Corporation; JOSHUA ANDREWS an individual; and DOES 1-100 inclusive, | Complaint Filed: January 15, 2021 |
| 20                        Defendants. | |

21
22
23
24                        **GENERAL DENIAL**

25          Defendants AMERICAN SECURITY INSURANCE COMPANY and JOSHUA ANDREWS

26  deny each and every allegation of Plaintiffs' unverified Complaint.

27  ///

28  ///

**AFFIRMATIVE DEFENSES**

Defendants, as further and separate defenses to the Complaint, allege the following Affirmative Defenses. Defendants expressly reserve the right to supplement these Affirmative Defenses in the event additional information is obtained that indicates the applicability of additional Affirmative Defenses. By listing these Affirmative Defenses, Defendants do not assume the burden of proving any matter upon which any other party bears the burden of proof.

**FIRST AFFIRMATIVE DEFENSE**

(Fails to State a Claim)

The Complaint does not describe the causes of action asserted against Defendants with sufficient particularity to enable Defendants to determine what defenses they have in response to Plaintiffs' causes of action.

**SECOND AFFIRMATIVE DEFENSE**

(Equitable Defenses)

Plaintiffs' claims may be barred in whole or in part by the doctrines of laches, unclean hands, waiver, or estoppel.

**THIRD AFFIRMATIVE DEFENSE**

(Comparative Fault)

Defendants are informed and believe, and upon such information and belief, allege that the damages Plaintiffs allege resulted from their own breach, neglect, or other misconduct or from that of their predecessors, assignors, or persons for whom Plaintiffs were responsible or with whom Plaintiffs were associated.

**FOURTH AFFIRMATIVE DEFENSE**

(Comparative Negligence)

Defendants are informed and believe, and upon such information and belief, allege that the damages Plaintiffs alleges were proximately caused by the intervening carelessness, negligence, or wrongful acts of Plaintiffs or their predecessors or assignors and that said carelessness, negligence or wrongful acts contributed to the incidents and damages and shall eliminate or reduce any damages Plaintiffs can recover from Defendants in this action.

1

**FIFTH AFFIRMATIVE DEFENSE**

2

(Intervening and Superseding Cause)

3      Defendants are informed and believe, and upon such information and belief, allege that the

4  damages Plaintiffs alleges were proximately caused by persons or entities other than Defendants and for

5  whom Defendants are not responsible. The negligence and fault of other persons or entities is an

6  intervening and superseding cause and shall eliminate or reduce any damages Plaintiffs can recover from

7  Defendants in this action.

8

**SIXTH AFFIRMATIVE DEFENSE**

9

(Failure to Mitigate Damages)

10     To the extent that Plaintiffs failed to mitigate, minimize, or avoid any damages they allegedly

11  sustained or will sustain, any potential recover against Defendants must be reduced by the amount

12  attributable to such failure.

13

**SEVENTH AFFIRMATIVE DEFENSE**

14

(No Damages)

15     Plaintiffs' claims are barred because Defendants did not damage Plaintiffs in the sum or manner

16  alleged or in any sum or manner at all. Plaintiffs are not entitled to compensatory damages, attorneys'

17  fees, punitive damages, or any other damages pursuant to any of the claims for relief alleged in the

18  Complaint.

19

**EIGHTH AFFIRMATIVE DEFENSE**

20

(Allocation)

21     The causes of action asserted in the Complaint are barred to the extent any alleged loss should be

22  allocated to other parties.

23

**NINTH AFFIRMATIVE DEFENSE**

24

(Failure to Include Necessary Parties)

25     The causes of action asserted in the Complaint may be barred to the extent Plaintiffs fail to

26  include all necessary or indispensable parties to the action.

27  ///

28  ///

ANSWER TO ORIGINAL COMPLAINT

**TENTH AFFIRMATIVE DEFENSE**

(Res Judicata or Collateral Estoppel)

The causes of action asserted in the Complaint may be barred by the doctrines of res judicata or collateral estoppel.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Spoliation)

The causes of action in the Complaint are barred to the extent Plaintiffs or their predecessors, assignors, or agent removed, destroyed, or in any way altered evidence relating the underlying claims alleged in the Complaint.

**TWELFTH AFFIRMATIVE DEFENSE**

(Policy Terms)

Plaintiffs' claims may be barred by the specific terms, exclusions, conditions, limitations, and other provisions contained in or incorporated by reference in the Policy.

**THIRTEENTH AFFIRMATIVE DEFENSE**

(Satisfaction)

To the extent that the Policy benefits have been paid or are paid to the designated beneficiary, or Defendants have otherwise met their obligations under the Policy, Defendants' obligations under the contract have been satisfied and the causes of action asserted in the Complaint are barred.

**FOURNTEENTH AFFIRMATIVE DEFENSE**

(Limitations Period)

Plaintiffs' claims may be barred by the applicable statutes of limitations or contractual limitations period set forth in the Policy.

**FIFTEENTH AFFIRMATIVE DEFENSE**

(Right to Amend)

Defendants reserves the right to amend this pleading at the conclusion of discovery to reflect additional affirmative defenses available to it as revealed through discovery or otherwise.

///

///

ANSWER TO ORIGINAL COMPLAINT

1    WHEREFORE, Defendants prays for judgment as follows:

2    1.  The Complaint be dismissed against Defendants and that judgment be entered in favor of

3        Defendants and against the Plaintiffs;

4    2.  Plaintiffs takes nothing by their action against Defendants;

5    3.  Defendants recover their costs in this action; and

6    4.  Defendants be awarded such other and further relief as the Court may deem just and proper.

7

8

9    Dated:  April 22, 2021                    **TITTMANN|WEIX LLP**

10

11                                              By:

12                                                  Raymond J. Tittmann
                                                    Edward J. Valdespino
13                                                  Christina M. Roberto

14                                              Attorneys for Defendants
                                                AMERICAN SECURITY INSURANCE COMPANY
15                                              and JOSHUA ANDREWS

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO ORIGINAL COMPLAINT

**PROOF OF SERVICE**

*Shropshire et al. v. American Security Insurance Company et al.*

Case No. CIV SB 2102687

I am an employee in the Los Angeles County, State of California. I am over the age of 18 years and not a party to the within action.  My business address is 350 S. Grand Ave., Ste. 1630, Los Angeles, CA 90071. On April 22, 2021, I served the foregoing documents entitled

**DEFENDANTS AMERICAN SECURITY INSURANCE COMPANY AND JOSHUA ANDREWS' ANSWER TO PLAINTIFFS' ORIGINAL COMPLAINT**

on the person or persons listed below, through their respective attorneys of record in this action, by placing true copies thereof in sealed envelopes or packages addressed as shown below by the following means of service:

| |
|---|
| CODY J. SHAVER, Esq. |
| Shaver Legal, APC |
| 4473 Main Street |
| Riverside, CA 92501 |
| cshaver@shaverlegal.com |
| *Attorney for Plaintiff* |

☒     BY MAIL:  By placing the original and/or a true and correct copy enclosed in a sealed envelope with postage fully prepaid, in the U.S. mail at Los Angeles, California.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon, fully prepaid at Los Angeles, California, in the ordinary course of business.

☐     BY PERSONAL SERVICE:  By causing personal delivery of the document listed above to the person at the address set forth listed above.

☐     BY ELECTRONIC TRANSMISSION.  By e-mailing the document(s) to the persons at the e-mail address(es).  This is necessitated during the declared National Emergency due to the Coronavirus (COVID-19) pandemic because this office will be working remotely.  No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

☐     BY OVERNIGHT MAIL:  I caused a copy of said document(s) to be placed in an overnight mail depository for next day delivery.

☒     STATE - I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Executed on April 22, 2021, at Los Angeles, California.

/s/ Megan Mulroy

_____

Megan Mulroy

ANSWER TO ORIGINAL COMPLAINT